ABRAHAM F. RIGHTOR and others *v.* AUGUSTUS S. PHELPS.

A contract to sell a right to locate a certain number of acres ' on any unappropriated lands' of the United States in a particular state, is not complied with by the offer of a right to locate such number of acres ' on any public lands in that state subject to entry.'   The contract contemplated the right of locating upon any part of the public domain within the state, while the offer restricted it to such portion as had been once offered at public sale.

APPEAL from the District Court of Ascension, *Nicholls*, J. Abraham F. Rightor, and Elizabeth Ann, his wife, daughter of William Conway, deceased, and the other heirs of the said Conway, are appellants from a judgment of the court below.

*Isley* and *Beatty*, for the appellants.

*Miles Taylor*, for the defendant.

BULLARD, J.   The plaintiffs represent, that being entitled as heirs of William Conway to certain tracts of land called the White Cliff claims, amounting in all to 4560 *arpens*, which they held in common, and which lands were then possessed by other persons claim-

ing title under the United States, and that being determined to apply to Congress for permission to locate an equal quantity of lands on any of the unappropriated lands of the United States in the state of Louisiana, they did by a notarial act bargain and agree to sell to the defendant, Phelps, all their right and title to the said tracts of land, or to such similar quantity of land as might be afterwards, by act of Congress, substituted therefor out of any unappropria ed public lands, which promise of sale was for and in consideration of four dollars per *arpent*, of which four thousand was payable in ten days, which was paid, and -the balance on the passage of such act of Congress, it being understood that the purchaser should be bound to pay only at the rate of four dollars per *arpent* for such quantity as might be delivered to him with a perfect title ; it being the object of said Phelps to acquire from the plaintiffs the right to locate a similar quantity of land on some of the public lands, by virtue of an act of Congress, the passage of which was anticipated, and to obtain which the said defendant was to take all the necessary steps at his own cost.

They further allege that on the 2d of July, 1836, Congress did pass an act by which they or their representatives were authorized to locate, within twelve months from the date of the act, on any of the unappropriated lands of the United States in Louisiana, one thousand and seventy acres in a body, and on any lands in the said state, *subject to entry*, the further quantity of 2789 acres, and that the proper officers were authorized to issue a patent or patents accordingly, provided that the petitioners or their representatives within one year, and previous to making the locations, should execute a release in favor of the United States of the land originally granted, and confirmed by certificates, Nos. 48, 49, 50.

Whereupon they notified the defendant to come forward and make his election, either to accept or reject the said act of promise of sale; and they allege that the defendant did by notarial act, on the 7th of May declare, as their legal representative, in virtue of the act of promise of sale, that he formally renounced, abandoned, and released in favor of the government the quantity of 1070 acres, and declared it to be his intention to renounce, release, and abandon the balance of said claims, as soon as he should have made the location with the approval of the proper officers of the government, in con-

formity to the act of Congress. The plaintiffs allege that in consequence of the premises, the defendant Phelps bound himself to pay the price of the whole tract or tracts as purchaser, and that he became unconditionally bound to them. They further aver that they offered in a formal manner to execute the conveyance contemplated by their agreement, and gave the defendant notice of the time and place where such conveyance would be made, but that he failed to attend. They therefore pray judgment for the balance of the stipulated price for the tracts of land agreed to be sold and conveyed.

The defendant, in his answer, admits the conditional agreement set forth in the petition, and avers that he has always been ready and willing to accept any act of Congress passed or to be passed, granting said land or otherwise, provided said act be in conformity with the promise of sale, and the understanding of the parties at the time of the contract. He further alleges that the plaintiffs never could make him a valid title to the lands, since one of the parties, the wife of Maurin, holds her portion as dotal property, which she cannot alienate.

Upon these pleadings the parties submitted their cause to a jury, whose verdict was for the plaintiffs for a part only of their demand, that is to say, for the price of such part of the lands as the act of Congress authorized to be located on any unappropriated lands in Louisiana, after deducting the amount already paid; and the plaintiffs, being dissatisfied with the judgment rendered on the verdict, prosecute the present appeal.

The appellee, in support of the judgment below, contends in this court, that it was proposed and intended by the parties, that an application should be made to Congress for permission to locate the quantity of land embraced in the White Cliff claims, on any public lands in Louisiana; and that the plaintiffs proposed to sell him their right and title to such claims, or to such other tracts as might be substituted for them, if the application should be successful; that the real object and intention was in entering into the contract, to acquire the permission of Congress to locate a similar quantity on any unappropriated lands. That the price was four dollars per *arpent* for so much as should be thus located. That the act of Congress, the passage of which he had procured by his exertions, permitted such location for only about one-third of the claim, and that to

that extent he was entitled to the advantage resulting from the act.

We readily admit the obvious distinction between *locating on any unappropriated lands*, and locating on public lands *subject to entry*. The distinction is made in the act of Congress in the record; and we therefore conclude that the parties, in their original contract, contemplated the passage of an act of Congress which should accord to the defendant the privilege of locating, not upon lands which had been offered for sale, but upon any part of the public domain within the limits of Louisiana. The act of Congress did not grant such a right for the whole quantity, but only for a certain portion; and with respect to the largest part of the right, it was restricted to such lands as were subject to entry, that is to say, such as had been once offered at public sale. It follows that, at least for a part, the defendant was not bound to accept the conveyance, and pay the price, the application to Congress, according to the intent of the parties, having failed.

It remains to enquire, whether the defendant has accepted the conditions of the act of Congress, notwithstanding this discrepancy, and thereby signified his intention to make the abandonment required by that act, and consequently to hold himself liable to pay the price. This depends upon the act of the 7th of May, which the plaintiffs allege was a formal acceptance, on the part of the defendant, of the act of Congress, and consequently a waiver of the condition that he should have the faculty to locate the whole quantity as contemplated by the contract. Let us therefore look into the act of the 7th of May, with a view to ascertain to what extent the defendant has waived any advantage he might have claimed under his original contract, and whether he has become liable for the price of the whole tract.

That act recites the substance of the original contract by which the delendant had agreed to purchase the three tracts of land, upon condition that permission should be obtained from Congress to locate the same upon any unappropriated public lands in the state of Louisiana, and that an act of Congress had been passed authorizing the heirs of Conway to locate, within twelve months from the passage of the act, on any unappropriated lands in the state of Louisiana, 1070 acres, and further to locate on any of the public lands *subject to entry*, the quantity of 2789 acres, under the

Rightor and others *v.* Phelps.

same limitations, provided the said heirs, or their legal representatives, should execute within a year from the date of said act of Congress, and before locating as aforesaid, a release in favor of the United States, for the lands originally included in the grants numbered 48, 49, and 50. The defendant then declares, in his capacity of legal representative of the heirs of Conway, in virtue of the act of sale, and in accordance with the act of Congress, that he formally renounces, releases, and abandons in favor of the United States the quantity of 1070 acres, it being the quantity he has already applied to the Surveyor General to locate, and a part of said original grants, which had been sold by the United States. He then continues to declare, in his aforesaid capacity, ' his intention to renounce, release, and abandon, in favor of the United States, the balance of said claims, to wit, 2789 acres, it being the part of said original grants, which has been confirmed by Commissioners of the United States as donations to settlers thereon, *as soon as he shall have made the location thereof,* with the approval of the proper officers of government; and he further declares, that it shall be distinctly understood that this act shall be considered as a formal and sufficient release, in favor of the United States, of the land originally included in the three grants, &c., and as soon as, and at the same time, that the proper officers shall recognise and approve the location he shall have made *in conformity with the said act* of Congress.'

This act appears to us a formal acceptance of the terms of the act of Congress. With respect to such portion of the land as had already been located by the defendant, it contains an unreserved surrender of the land originally granted, the defendant assuming to act as the representative of the heirs of Conway, in virtue of his contract with them; and as it regards the balance of the claim to be located on public land *subject to entry,* he announces his intention to comply with the act of Congress, and to release and abandon all title under the original grants, simultaneously with the approval of the locations which he is to make in conformity with said act of Congress. As to the first quantity of 1070 acres, it appears that the defendant was satisfied, and his release to the United States of so much of the land as was embraced in the original grants, was unconditional and unreserved. The plaintiffs could no longer pretend to

any title to that portion ; the contract thus far had become absolute. Could that contract be divided ? Was it the intention of the parties to sell or to purchase less than the whole quantity of land embraced in the three grants ? The terms of the contract are : ' three tracts of land above described, containing in all **4560** *arpens*, or *such other similar quantity*, as may be hereafter, by permission of Congress, substituted therefor, on any of the unappropriated public lands,' &c. The price is declared to be $18,240, that is to say ' at the rate of *four dollars for each and every superficial arpent*.' Nothing shows that the plaintiffs intended in any contingency to sell less than the whole quantity of land embraced in the grants ; and the defendant having signified his intention to comply with the conditions of the act of Congress, and to take a part of the land from that portion of the domain subject to entry, instead of insisting upon the privilege of locating the whole upon any unappropriated public lands within the state of Louisiana, is no longer in our opinion at liberty to retract without the consent of the plaintiffs. The contract of sale has become absolute, and the defendant owes the balance of the price stipulated in the contract.

It is therefore ordered that the judgment of the District Court be reversed, and that the verdict be set aside; and proceeding to render such judgment as should, in our opinion, have been given below, it is further decreed that the plaintiffs recover of the defendant fourteen thousand two hundred and forty dollars, with interest at five per cent from judicial demand, to wit: the 22d day of September, 1837, and the costs in both courts.

---

## Same Case—On an application for a re-hearing.

A re-hearing will not be allowed on a point not made in the argument of the case, nor noticed in the points filed.

*Janin*, for the defendant prayed for a re-hearing.

BULLARD, J. The petition in this case for a re-hearing, brings

to our notice questions relating to the power of some of the plaintiffs to sell, which were not suggested in the points filed before the cause was set down for argument. We never allow re-hearings on points not made in the argument, and we are not dissatisfied with the construction we first gave to the contracts between the parties.

*Re-hearing refused.*