## Wytheville.

PENN AND ALS. V. INGLES.

JUNE 17th, 1886.

1. PRINCIPAL AND SURETY.—The general rule is that creditor is under no obligation to exhaust his remedies against principal before resorting to surety. *Meade* v. *Grigsby*, 26 Gratt. 612. But where he goes into equity to enforce his debt against principal and sureties, the burden will be laid first on principal. *Horton* v. *Bond*, 28 Gratt. 815.
2. IDEM—*Securities—Subrogation.*—Surety is entitled to enforce every security for the debt which creditor has against principal.
3. EQUITABLE JURISDICTION AND RELIEF—*Injunctions.*—Equity will interpose pending action or after judgment where there is to the claim asserted at law (whether by statutory motion or common law action) a distinct equitable defence ; and will ordinarily proceed to a final disposition of the case. *Walters* v. *F. B. of Va.*, 76 Va. 12.
4. IDEM—*Accounts.*—Equity hath jurisdiction in matters of complicated accounts, especially those involving equitable claims or trusts. *Tillar* v. *Cook*, 77 Va. 477.

Argued at Richmond, but decided at Wytheville.

Appeal from decree of corporation court of city of Danville, rendered February 14th, 1884, in the chancery cause of *Thomas G. Penn* v. *C. H. Ingles and als.*, therein pending.

The appellee, Ingles, was county treasurer of Henry county from the year 1873 to 1881, inclusive. The appellant, Geo. R. Hairston, served for several years of that time as one of his deputies, the appellant, Penn, being one of the sureties on the official bond of Hairston, which was executed in December, 1876. The statute authorizes the appointment of deputy trea-

surers, but does not prescribe the term for which such appointment shall be made. Code 1873, ch. 46, sec. 7; Acts 1878–79, p. 320, sec. 7. The appellants, however, contend, and on the other hand it is denied, that it was the custom of Ingles to appoint his deputies annually, to serve for one year, and that Hairston's official bond was executed with the understanding that it was to cover a period of one year only; that is, for the faithful performance by Hairston of his duties as deputy treasurer in collecting taxes assessed for the year 1876. No particular time is specified in the bond itself, the condition being "that if the said Geo. R. Hairston, who has qualified as deputy for the said C. H. Ingles, treasurer for Henry county, Virginia, shall well and truly perform all the duties appertaining to the office of deputy treasurer, as aforesaid, then the above obligation to be void, otherwise to remain in full force and virtue."

This controversy was begun in 1882 by motion in the county court of Henry, in the name of Ingles against Hairston and his sureties, to recover a balance alleged to be due by Hairston on account of taxes collected and unaccounted for by him for the year 1877. The motion was removed to the circuit court of Henry, and afterwards to the corporation court of the town of Danville, where it is still pending and undetermined. After the removal of the case, the defendant, Penn, filed his bill in the last mentioned court, alleging that he had distinct equitable defences to the motion at law, which could be appropriately considered and determined only in equity, and praying an injunction to restrain further proceedings at law, and for general relief. The material allegations of the bill are set forth in the opinion. Upon the filing of the bill an injunction was awarded.

Ingles demurred to the bill, and also answered. Hairston, who was also made a defendant to the bill, answered, admitting its allegations to be true, and praying that his answer be

treated as a cross-bill. Testimony was taken, and the cause coming on to be heard, the demurrer was sustained, the injunction dissolved, and the bill dismissed. Thereupon, Penn and Hairston obtained an appeal to this court.

*Whittle & Anderson* and *Staples & Mullins*, for the appellants.

*Green & Miller*, for the appellee.

LEWIS, P. (after stating the facts), delivered the opinion of the court.

The demurrer was doubtless sustained because, in the opinion of the lower court, the remedy at law is adequate and complete for the attainment of justice between the parties. And there is no doubt that, so far as it relates to the period of time covered by Hairston's official bond, the defence of the sureties can be made as fully at law as in a court of equity. *Commonwealth* v. *Fairfax and others*, 4 H. & M. 208. Hence, if the case here rested on that point alone, the decree complained of would be unobjectionable.

Nor is the position, as a general proposition, well taken, that the plaintiff in the motion at law ought to be compelled to exhaust his remedies against the principal debtor, Hairston, before proceeding against the sureties. It is true that where the creditor seeks in a court of equity to enforce payment of a debt against the principal debtor and his sureties—all the parties being before the court—relief will be granted in accordance with the equities of the parties *inter sese,* where that can be done without material delay or injury to the creditor; that is, the burden will be laid first upon the principal debtor, and his property will be subjected to the exoneration of that of the sureties. *Horton* v. *Bond,* 28 Gratt. 815; *Muse* v. *Friedenwald,*

77 Va. 57. But this does not prevent the creditor from proceeding at law against the principal and the sureties in the first instance, and obtaining a judgment and execution against them jointly. Nor will a court of equity interfere by injunction in such case, except under peculiar circumstances, the general rule being that "the creditor is under no obligation to look to the principal debtor or to his property, or to exhaust his remedies against the latter before resorting to the surety." *Meade* v. *Grigsby's Adm'rs*, 26 Gratt. 612, 2 Lead. Cas. Eq. Pt. I, p. 317. There are, however, other assignments of error in the petition for appeal which are well taken.

Thus, the bill alleges, and the demurrer admits, that on the 15th of June, 1876, Hairston being individually indebted to Ingles in the sum of $775, executed a deed conveying certain real estate in the town of Martinsville to a trustee to secure the payment of that debt; that on the 28th of April, 1879, by a statement furnished Hairston by Ingles, it appeared that he was indebted to the latter in the further sum of $516.82, and that having in his hands a number of uncollected tax tickets, the exact amount of which was not known, he executed a bond to Ingles for $1,313, supposed to be sufficient to cover both the amount claimed to be due in the statement and the tax tickets; that he thereupon executed a second trust deed to the same trustee on the same property to secure the payment of the said bond, purporting to represent a debt due by Hairston in his individual capacity exclusively; that in December, 1880, Ingles sold the trust property for $2,500, collected the purchase money, and applied it wholly to his own use; that of the money thus collected, there was in fact, a surplus of at least $1,000, after satisfying the specific liens on the property, which, as far as necessary, ought to have been applied to the payment of the sum due by Hairston on account of the said tax tickets; but notwithstanding a sum sufficient to pay

the tax tickets was embraced in the bond and deed of trust, Ingles, claiming the whole amount of the bond to be due by Hairston in his private capacity, is now seeking by the proceeding at law to recover the amount of the very tax tickets so secured, and refuses to allow any credit therefor.

Here, then, is a defence not only equitable in its character, but one which is solely cognizable in a court of equity; since the parties in a court of common law would be estopped from setting up any defence inconsistent with the terms of the bond and deed of trust. And it is well settled that a court of equity will interfere by injunction, either pending an action or after judgment, where there is a distinct defence to the claim asserted at law, which is solely cognizable in equity. And it is equally well settled that where a court of equity has acquired jurisdiction for one purpose, it will ordinarily proceed to a final disposition of the cause. *Walters* v. *Farmer's Bank of Virginia,* 76 Va. 12; *Rust* v. *Ware,* 6 Gratt. 50.

In *Warwick* v. *Norvell,* 1 Rob. 326, an injunction having been awarded to restrain proceedings at law, objection was made to the jurisdiction, but the objection was overruled. "It is sufficient," said the court, "to sustain the jurisdiction of the court of equity, if it be shown that the matters relied on in the bill could avail the appellants in equity only. No authority has been produced which establishes that a party having a defence at law to an action brought against him, and a distinct ground for equitable relief should his defence prove unavailing, must abandon his legal defence by confessing judgment, or await the decision of the action at law before he can be entertained in equity." See also 1 Bart. Ch'y Pr. 33; 2 Lead. Cas. Eq. Pt. II, p. 1335, *et seq.,* where the question is discussed, and the authorities are collected.

The bill further alleges that there are numerous unsettled transactions between Ingles and Hairston, extending over a

period of several years; that great confusion has arisen from the mingling of their private and official transactions during that time, and that until these complicated transactions are settled, which can only be done in a court of equity, justice between the parties cannot be done; and upon this ground, also, the jurisdiction of a court of equity is unquestionable.

In *Staples* v. *Turner*, 29 Gratt. 330, an injunction was awarded to stay proceedings in pending actions at law, where confusion had resulted from the blending of individual and fiduciary transactions in the accounts between the parties, thus making a resort to a court of equity necessary for a settlement of the accounts. The court proceeded on the ground that chancery was the most appropriate jurisdiction for correcting errors in the accounts, and for separating the individual and fiduciary accounts, and ascertaining the amount for which the defendant was individually bound. "It was at least questionable," it was said, "whether this could be done in a court of ordinary jurisdiction. It was clearly more appropriate to the chancery jurisdiction; and to the attainment of justice it was essential, that the individual and fiduciary accounts should be stated separately."

Blackstone, in his commentaries, places the jurisdiction of courts of equity in matters of account upon the sole ground of the right of those courts to compel a discovery. "But this," says Judge Story, "although a strong, yet is not the sole ground of the jurisdiction. The whole machinery of courts of equity is better adapted to the purpose of an account in general; and in many cases independent of the searching power of discovery, and supposing a court of law to possess it, it would be impossible for the latter to do entire justice between the parties; for equitable rights and claims, not cognizable at law, are often involved in the contest. Lord Redesdale has justly said, that in a complicated account, a court of law would be incom-

petent to examine it at *nisi prius* with all the necessary accuracy; and until the result of the account is known, the justice of the case cannot appear." And, says the same author, "wherever the account stands upon equitable claims, or has equitable trusts attached to it, there is no doubt that the jurisdiction is absolutely universal, and without exception." 1 Story's Eq., secs. 451, 454, See also *Oelrichs* v. *Spain*, 15 Wall. 211; *Tyler* v. *Nelson's Adm'x*, 14 Gratt. 214; *Coffman* v. *Sangston*, 21 Id. 263; *Tillar* v. *Cook*, 77 Va. 477.

In the present case, taking the allegations of the bill to be true, as the demurrer admits them to be, not only are complicated accounts the subject of litigation between the parties, but there are equitable trusts involved which brings the case fully within the rule just mentioned. For no principle in equity jurisprudence is better settled than that a surety is entitled to enforce every security for the debt which the creditor has against the principal debtor; and therefore a mortgage or other security taken by the creditor must be dealt with in good faith and held in trust, not only for the creditor's security, but for the surety's indemnity. And this right of the surety stands not upon contract, but upon principles of natural justice. *Hayes* v. *Ward*, 4 Johns. Chy. 123; *Stephenson* v. *Taverners*, 9 Gratt. 398; *Meade* v. *Grigsby*, 26 Id. 612.

Now, the bill alleges that when the bond for $1,313 was executed and secured, there was an unsecured balance due to Ingles by Hairston on private account, which amounted only to the sum of $516.82; but that having in his hands a number of uncollected tax tickets, the exact amount of which was not known at the time, the bond was taken for the above mentioned sum, the difference representing an intended security for the tax tickets. It also alleges that Ingles has collected the whole of the purchase money for the trust property, and refuses to allow any credit on account of the taxes thus secured. And

this being so, Ingles must, in equity, be considered as a trustee, and as such accountable to the sureties, if they be liable at all for the claim asserted, for so much of the purchase money as is properly applicable to the payment of the taxes secured by the trust deed.

Nor can it be doubted that the jurisdiction of equity is as complete in a case like the present, where the proceedings enjoined are under the statutory remedy by motion, as in an ordinary case of a common law action. For that remedy, though designed to be simple and speedy, is not more efficient for the purposes of the defence in this case than an ordinary action would be; and it cannot be supposed that the legislature in providing it, intended to oust the jurisdiction of equity in respect to matters over which its jurisdiction has been immemorially exercised. Certainly there is nothing in the statute to warrant such a conclusion. Code 1873, ch. 163; Acts 1878-79, p. 320.

In High on Injunctions, vol. 1, sec. 29 (2d ed.), the general rule is stated to be that "where a positive statutory remedy exists for the redress of particular grievances, a court of equity will not interfere by injunction and assume jurisdiction of the questions involved, nor will it enjoin proceedings under such statutory remedy, since such interference would place the judicial above the legislative power of the government." But the author adds the important and well-established qualification, that "to deprive a plaintiff of the aid of equity by injunction, it must also appear that the remedy at law is plain and adequate; in other words, that it is as practical and efficient to secure the ends of justice and its proper and prompt administration as is the remedy in equity." See also 1 Story's Eq. sec. 80; *Crawford* v. *Thurmond*, 3 Leigh, 85; *Boyce* v. *Grundy*, 3 Pet. 210 ; *Watson* v. *Sutherland*, 5 Wall. 74.

It is clear, therefore, that the objection to the jurisdiction in the present case is not well founded ; and since the bill on its·

face is unobjectionable, the decree sustaining the demurrer is erroneous.

The appellee, however, contends that upon the proofs in the cause the bill was properly dismissed, and therefore that the decree should be affirmed.

The rule undoubtedly is well-settled that where, upon the whole record, a judgment or decree appears to be substantially right, it will be affirmed, notwithstanding an error may have been committed, which does not affect the real merits of the case. *Brobst* v. *Brock*, 10 Wall. 519; *Danville Bank* v. *Waddill*, 27 Gratt. 448; *Boyce and Wright* v. *McCan*, 76 Va. 740; 4 Min. Insts., Pt. I, p. 870, and cases cited. But after an examination of the evidence, we are of opinion that the case is not in such condition as to enable this court safely to pass upon the merits and to enter a final decree.

The decree of the corporation court will therefore be reversed; the injunction reinstated, and the case remanded, with directions to cause the necessary accounts to be taken by a master commissioner, and for such other proceedings to be had as may be necessary in order to a final decree.

DECREE REVERSED.