Argued September 29, decided October 14, rehearing denied December 30, 1913.

# HURLBURT v. MORRIS.

(135 Pac. 531.)

**Account—Equitable Relief—Sufficiency of Evidence.**

1. In a suit by an employee of a copartnership for an accounting of the proceeds of the sale of certain corporate stock by the partnership, evidence *held* sufficient to show that the firm had transferred the stock to the employee in part payment for services rendered by him.

[As to right of agent to file bill against principal for accounting, see note in Ann. Cas. 1914B, 1028.]

**Account—Equity Jurisdiction—Fiduciary Relations.**

2. Where an employee of a firm transferred a certificate of corporate stock owned by him to the firm for sale, a fiduciary relation was created which was sufficient to give equity jurisdiction over suit to compel an accounting for the proceeds of the sale, especially where there was a legal action pending between the same parties in which the same transaction was involved, and the parties had stipulated to have the law action tried with the suit in equity.

**Account—Equity Jurisdiction—Adequacy of Legal Remedy.**

3. The fact that the employee transferred the legal title to the stock to the employers would render his remedy at law, in which he would have to establish a legal title, inadequate.

**Account—Equitable Relief—Conditions Precedent—Demand.**

4. Where there had been close business and friendly relations between an employee of a partnership and the members of the firm, and the employee had intrusted most of his business affairs to the firm, a letter from him to them stating that he desired to have his matters put in business-like shape with a record which would not be misunderstood if anything happened to him was a sufficient demand, if one was necessary, to enable him to maintain an equitable suit for an accounting.

**Appeal and Error—Review—Findings of Fact—Equitable Suit.**

5. The findings of fact of the trial court who heard the witnesses testify should be given great weight on appeal.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is a suit in equity by W. H. Hurlburt, against James H. Morris and Fred S. Morris, partners doing business under the firm name and style of Morris

Brothers, for an accounting upon three separate causes of suit. The first, referred to as the. Oregon Water Power & Railway Company matter, is for an accounting of the proceeds of the sale of 2,000 shares of the capital stock of that company, which plaintiff alleges he owned, and which he avers were sold by the defendants for an amount unknown to him, 1,000 shares of which are in dispute. The second cause of suit is for an accounting of the proceeds of the sale of a tract of 49.15 acres of land conveyed by plaintiff to the Portland Water Power & Electric Transmission Company, and for one half of the profits arising from the sale by defendants of the capital stock and property of that corporation. The third cause of suit is for an accounting of the proceeds of the sale by defendants of certain timber held in trust by defendant Fred S. Morris, in equal shares for the benefit of himself, plaintiff, and one Geo. I. Brown.

Upon the trial a decree was entered in favor of the plaintiff upon the first cause of suit, and upon the second in favor of the defendants. The plaintiff abandoned the third cause of suit, which leaves the first only for consideration; the second and third being immaterial except so far as the facts relating to the same shed light in the consideration of the first cause of suit. The defendants appeal from the decree.

The following is a brief history of the facts upon which the first cause of suit is based: The plaintiff, W. H. Hurlburt, came to Portland, Oregon, in 1891, as the assistant general passenger agent of the Union Pacific System. In 1894 he was made general passenger agent of the Oregon Railway and Navigation Company, continuing with that company until January 15, 1901, when he entered the service of Morris & Whitehead, bankers, a corporation of Denver, Colorado, as assistant manager of the western department at Portland, Oregon, at a salary of $4,000 a year.

In 1900 Morris Brothers owned all the capital stock of Morris & Whitehead, bankers, and were engaged in business under the latter name. Shortly before the first of the year 1901, Fred S. Morris approached W. H. Hurlburt, and sought to employ him for Morris & Whitehead, bankers. At that time Hurlburt was receiving a salary from the railroad company of $3,000 per year. About December, 1903, Morris Bros. & Christensen succeeded Morris & Whitehead, bankers, and in June, 1905, Morris Bros. & Christensen dissolved. Among other assets acquired by Morris & Whitehead, bankers, was a traction or electric railway line known as the East Side Railway Company. This company was reorganized under the name of Portland City & Oregon Railway Company, and was again reorganized under the name of the Oregon Water Power & Railway Company. Fred S. Morris was the manager of the western department of Morris & Whitehead and its successors.

Plaintiff claims that before he entered the service of Morris & Whitehead, bankers, he was informed by Fred S. Morris that they intended to take over some important enterprises, and to promote some new corporations; that they could not afford to pay a very large salary, but that they would make it an object to plaintiff to come with them, and that they would give him some of the stock in the corporations in addition to his salary; that the position which they desired plaintiff to take was an important one, and meant the handling of considerable capital; that he entered the service of the corporation with the understanding that he was to be given some of the stock of the corporations, which the defendants intended to promote as additional compensation for his services. The corporation acquired the property of the Portland City & Oregon Railway Company, which was afterward reorganized under the name of the Oregon Water

Power & Railway Company, after the plaintiff entered its service. Hurlburt was made president of the Portland City Railway Company, and subsequently of the Oregon Water Power & Railway Company, and continued as such president until Morris Brothers sold their interest in the capital stock of the last-mentioned company about April 28, 1906. The capital stock of the Oregon Water Power & Railway Company was $2,000,000 divided into 20,000 shares. The company also owned and controlled several other corporations then engaged in business in the states of Oregon and Washington. Plaintiff also became the president of the Chehalis Water Company, the Grants Pass New Water, Light & Power Company, the Washington Company, the Land Company of Oregon, and became a director of the Oregon General Electric Company.

At the first issue of stock of the Oregon Water Power & Railway Company August 12, 1902, one share was issued to each of the following, A. B. Crosman, J. F. Watson, W. T. Muir, and W. H. Hurlburt, and the remainder, with the exception of 1,000 shares, was issued to Morris Brothers. Plaintiff claims that, after the organization of the Oregon Water Power & Railway Company, Fred S. Morris, as manager for Morris & Whitehead, bankers, at various times agreed to issue some of the capital stock of that corporation to plaintiff, pursuant to the agreement made when the plaintiff entered the service of Morris & Whitehead, bankers. The plaintiff continued in the employ of the partnership of Morris Bros. & Christensen, which took over the assets and assumed the liabilities of Morris & Whitehead, bankers, under the same arrangement and with the same understanding that he had had with the latter. Plaintiff claims that, after the formation of the partnership of Morris Bros. & Christensen, defendant Fred S. Morris, as well as the other members of that firm, agreed that the plaintiff and Geo. I.

Brown, engineer of the Oregon Water Power & Railway Company, and Wm. T. Muir, secretary and attorney thereof, were inadequately compensated for their services; that Fred S. Morris directed Forbes B. Pratt, bookkeeper for the partnership, to issue to plaintiff, to Geo. I. Brown, and to Wm. T. Muir 1,000 shares each of the capital stock of the Oregon Water Power & Railway Company, as additional compensation for the services which they had rendered. Pursuant to such direction certificates Nos. 41 and 42 for 1,000 shares each in this corporation were 'on the seventh day of November, 1904, issued to W. H. Hurlburt and Geo. I. Brown, respectively. At the annual meeting of the Oregon Water Power & Railway Company on January 10, 1905, the 1,000 shares issued to Hurlburt and the 1,000 shares issued to Brown stood on the books of the company in their respective names, and were represented by them. F. S. Morris was present at that meeting, and represented 4,654 shares of the stock. About June, 1905, an agreement was made for the dissolution of the partnership of Morris Bros. & Christensen, and the new partnership of Morris Brothers was formed. On July 1, 1905, the plaintiff's salary was increased to $6,000. Plaintiff claims that at this time it was understood by the defendants that he was the owner of the 1,000 shares represented by certificate No. 41; that afterward Fred S. Morris began negotiations for the sale of the stock and property of the Oregon Water Power & Railway Company; that in the fall of 1905 he requested the plaintiff to indorse and transfer to him certificate No. 41, and made a similar request to Geo. I. Brown in regard to his stock certificate, assigning as a reason for such demand that he desired to show the intending purchasers of the stock that he was able to deliver the same; that plaintiff transferred certificate No. 41 to F. S. Morris for that purpose only at the same time

other stock was transferred. On the thirteenth day of October, 1905, certificates Nos. 90 and 91 were issued to Fred S. Morris, in lieu of certificates Nos. 41 and 42. On the fifteenth day of December, 1905, plaintiff and Wm. T. Muir purchased 1,000 shares of the stock from what was known as the Ivens stock, and certificates Nos. 112 and 113 for 1,000 shares each were issued to the plaintiff and Muir, respectively. Subsequently, at the request of F. S. Morris, the plaintiff transferred to him certificate No. 112, with the same understanding and upon the same conditions as he had transferred certificate No. 41. F. S. Morris agreed with the plaintiff that when they sold their shares of stock in the corporation they would sell and dispose of the plaintiff's shares (1,000) represented by certificate No. 112, as well as the 1,000 shares theretofore represented by certificate No. 41, at the same price, and account to him therefor. About April 27, 1906, Fred S. Morris finally made a sale of the stock and property, including the stock owned by plaintiff, for $65 per share. He then advised the plaintiff that he had instructed Mr. Pratt to credit plaintiff's account with $25,000, and stated that he was not receiving all of the money from the sale, but was taking notes in part payment which he had agreed not to hypothecate; that he required a great deal of money to straighten out the affairs of the Providence & Danielson Railway Company, and the Jersey Central Traction Company, and that he wanted the matter of the payment of the balance due to plaintiff on the sale of this stock left until the sale of the Jersey Central road, and that, if plaintiff required money, he would advance it from time to time until final settlement was made. Hurlburt further states that he endeavored to make a settlement with the defendants for the sale of the stock and for the amount due him on account of the transactions mentioned in the other causes of suit;

but that the defendants finally took the position that plaintiff was not the owner of the 1,000 shares represented by certificate No. 41, and that they had fully accounted to him for the amount due him on account of the sale of shares represented by certificate No. 112. Plaintiff instituted this suit.

The defendants in their answer to plaintiff's first cause of suit, after denying that plaintiff was the owner of any stock in the Oregon Water Power & Railway Company, except that represented by certificate No. 112 for 1,000 shares, and after setting forth a settlement with the plaintiff for the amount received from the sale of this stock and for all transactions between them, set up a cross-suit and counterclaim in equity for the recovery of $2,000, and interest, and the sum of $200, attorneys' fees, on a promissory note executed by the plaintiff, and to foreclose a lien upon three Jersey Central Traction Company bonds held by the defendants as security therefor. On the same day that this suit was brought the defendants commenced an action at law against the plaintiff to recover the sum of $5,000 for money loaned to plaintiff. The latter in the action at law answered, admitting the payment to him of the $5,000, and claiming that the sum was on account of money due him from Morris Bros. Plaintiff then filed in the action at law a complaint in equity in the nature of a cross-bill, setting up the same facts as contained in this complaint. The defendants filed an answer to the cross-complaint, setting up the same matters contained in their answer to this suit, and Hurlburt replied, setting up the same facts contained in his reply to the answer in this case. Upon the trial in this case it was agreed between the respective counsel that the two causes should be consolidated and tried together; that the court should make one set of findings and one decree for both cases.

AFFIRMED.

For appellants there was a brief over the names of *Messrs. Teal, Minor & Winfree* and *Mr. W. A. Johnson,* with oral arguments by *Mr. Wirt Minor* and *Mr. John M. Gearin.*

For respondent there was a brief over the names of *Mr. William D. Fenton, Mr. Ralph E. Moody, Mr. J. E. Fenton* and *Mr. Ben C. Dey,* with oral arguments by *Mr. William D. Fenton* and *Mr. Moody.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. The testimony upon the pivotal point in this suit, that is, as to the ownership of the 1,000 shares of stock represented by certificate No. 41, comes to us as follows: Plaintiff testifies that, pursuant to an understanding had with F. S. Morris, as representative of the different partnerships referred to, certificate No. 41 for the 1,000 shares of stock in dispute was issued to him on November 7, 1904, as compensation for the services which he had rendered in building up the Oregon Water Power & Railway Company, and also for other services performed in behalf of defendants. It also appears that on November 7, 1904, there was issued to plaintiff certificate No. 35 for 1,000 shares of the stock of the Oregon Water Power & Railway Company, and to Geo. I. Brown, chief engineer of the company, certificate No. 37 for 1,000 shares. These certificates, with others, were canceled, and in lieu of No. 35, certificate No. 41 for 1,000 shares was issued to the plaintiff, and in place of No. 37, certificate No. 42 for the same number of shares was issued to Geo. I. Brown. Mr. Pratt, the bookkeeper of the concern, wrote the certificates, and the words "Authority F. S. Morris" appear on the stubs of these certificates in the handwriting of F. B. Pratt. It also appears that they were written by the bookkeeper from a written memorandum furnished him by F. S. Morris. These

certificates, with others held by defendants and some
of their associates, remained in the stock book until
they were indorsed by the plaintiff and Mr. Brown the
next October.    Wm. T. Muir, an eminent attorney of
this court, testified that, when a suit pertaining to the
settlement of the partnership affairs of Morris Bros.
& Christensen was on trial in Philadelphia in 1908,
while he was attending as a witness in that case, the
question arose about the ownership of the Oregon
Water Power & Railway Company stock, and that
both F. S. Morris and James H. Morris told him that
at the time of the settlement of the partnership affairs
of Morris Bros. & Christensen it was arranged that
1,000 shares of the capital stock of the Oregon Water
Power & Railway Company should go to Muir, and
that Hurlburt should have 1,000 shares, and Mr.
Brown 1,000 or 2,000 shares; that their partnership
settlement was made with that understanding, Chris-
tensen contributing his share of the contribution.    He
stated that this was the first he knew of his being en-
titled to 1,000 shares of the stock, or to any of the
proceeds thereof.    The plaintiff is also corroborated
to a certain extent by the evidence of Mr. Christensen,
who stated that at the time of the dissolution it was
understood that he should take care of his friends, and
that Morris Brothers should take care of their friends,
and that 1,000 shares of this stock should go to Mr.
Brown, the engineer, and 1,000 shares to Wm. T. Muir,
the attorney for the company; and that he thought
that Mr. Hurlburt was included among their other
lieutenants who were to receive a portion.    It appears
that the proceeds, $65,000, of the 1,000 shares issued
to Geo. I. Brown, were paid to him.    On the other
hand, the defendants deny that there was any under-
standing or agreement that any of the stock in this
corporation or in any other should be issued to the
plaintiff as compensation for his services.    Mr. F. S.

Morris, the moving spirit in the affairs of Morris Brothers in the west, stated that he had no recollection of the issuance of certificates Nos. 41 and 42 to the plaintiff and Mr. Brown, respectively, and the indorsement thereof to himself. Morris stated that there was no reason on earth why he should give those certificates to either Mr. Hurlburt or to Mr. Brown. He also testified thus: "Toward the last of my ownership I said that if I sold out I would try and do something for him (Hurlburt) take care of him, pay him for what he was grumbling about, hard work, etc." It appears from Mr. Morris' evidence that while they managed to meet all their obligations for a time before the sale of the Oregon Water Power & Railway Company stock the financial clouds were quite threatening. It seems that a great deal depended upon the successful determination of the Oregon Water Power & Railway Company. Mr. Morris further stated that he paid Mr. Hurlburt for his services in full; that he never authorized the issuance of the stock to him or to Brown, but that when Morris Bros. & Christensen dissolved he stated that he would like to do something for Mr. Brown, Mr. Hurlburt, and Mr. Muir; that "Mr. Brown was the whole thing."

The voluminous record discloses that Hurlburt was president of a number of active, growing, western corporations, if they were all like the samples mentioned. That he greatly aided in making the success of the enormous venture of defendants is not successfully controverted. While Mr. Morris gives testimony indicating what he now considers the plaintiff is entitled to, it appears that there has been a change in his opinion during the time that has elapsed since the arrangement was made, as shown by a preponderance of the evidence. It is not strange or improbable that plaintiff's employers, more properly speaking, his associates, should agree to reward him with a portion of

what he helped earn. Careful consideration of the evidence convinces us that they did make such bestowal. It is not enough for the defendant F. S. Morris to controvert the testimony in this case upon material points by stating that he does not remember. It is claimed by the defendants that the plaintiff's conduct is inconsistent with an unsettled claim of the proceeds of this stock. It should be remembered that close, personal relations existed between the plaintiff and the defendants. Hurlburt states, "I never had a piece of paper with Mr. Morris in my life." It appears that each placed implicit confidence in the other. No convincing evidence of a settlement in regard to the stock formerly represented by certificate No. 41 is found in the record. Plaintiff did not keep strict account of his affairs with the defendants. In fact the latter at times looked after plaintiff's personal expenses. He appears to have devoted all his energies and made the effort of his life to carry on the defendants' business, particularly the railway portion, in which he had had a large experience. When all the circumstances are taken into consideration, the fact that there was a misunderstanding and dispute in relation to the matter pertaining to the second and third causes of suit does not materially weaken the plaintiff's claim to the 1,000 shares of stock in question.

2. The jurisdiction of a court of equity to determine the controversy is challenged by counsel for defendants. It is earnestly contended that plaintiff has a full and complete remedy at law, if any, as shown by the evidence in the case, and that the suit should be dismissed. On the other hand, it is contended by counsel for the plaintiff that, where a person is intrusted with the property of another to sell, the latter becomes the trustee of the former, and may be required to account in equity, when upon such accounting the burden is upon him to show that his duties as such

trustee have been fully performed: *Marvin* v. *Brooks,* 94 N. Y. 71. In the case just cited it was held that an agent who had been intrusted with his principal's money to be expended for a specific purpose might be required to account in equity, and that upon such an accounting the burden was upon him to show that his trust duties had been performed and the manner of their performance. The jurisdiction was placed upon the ground of a fiduciary or trust relation, and it was held that a court of equity had jurisdiction over trusts and those fiduciary relations which partake of that character; but it was held that the existence of a bare agency was not sufficient, that it must be an agency coupled with some distinct duty on the part of the agent in relation to funds or some specific property.

In 1 Pomeroy's Equity Jurisprudence (third edition), Section 186, in the discussion of concurrent jurisdiction of equity, we find the following: ''Among the most common instances in which this remedy is employed by courts of equity are the ascertaining and settlement of claims and liabilities between principals and agents, and between all other persons standing in fiduciary relations to each other. * * '' In 2 Story's Equity Jurisprudence (twelfth edition), it is stated, at Section 975, that in general a trustee is suable in equity in regard to any matters touching the trust. When Hurlburt indorsed the certificate of stock No. 41 to defendant F. S. Morris for the firm which he represented, and Morris assured him that he would take care of his interests, Morris became the agent of Hurlburt for that purpose, and thereafter a fiduciary relation existed between the plaintiff and the defendants. Where the relation of principal and agent is such that a confidence is reposed by the principal in his agent, and the matters for which an accounting is sought are peculiarly within the knowledge of the latter, equity will assume jurisdiction: 2 Pomeroy's Equitable Rem-

edies, §§ 931, 932; *Irvine* v. *Dunham,* 111 U. S. 327, 334 (28 L. Ed. 444, 4 Sup. Ct. Rep. 501); *Kilbourn* v. *Sunderland,* 130 U. S. 505, 514 (32 L. Ed. 1005, 9 Sup. Ct. Rep. 594); *Clews* v. *Jamieson,* 182 U. S. 461, 478, 481 (45 L. Ed. 1183, 21 Sup. Ct. Rep. 845). In many cases it appears that the equitable jurisdiction over matters of account is exercised not primarily upon the ground of account alone, but because there is involved some recognized head of equitable jurisdiction: 1 Cyc. 417. The learned counsel do not disagree as to the law, but in the application thereof. Moreover, the defendants in their answer asked for affirmative relief, and stipulated with plaintiff to try the law action together with the suit in equity.

3. If it be that the plaintiff would have a remedy at law, in view of the fact that the legal title to the certificate of stock in question was held by defendants after its indorsement by the plaintiff, and it being necessary for plaintiff to establish his legal title thereto, we think that his remedy at law would be inadequate, and that a court of equity should determine the cause.

4. It is also contended by the defendants that the demand for accounting by plaintiff was insufficient, and that the same is necessary in order to permit plaintiff to recover in this suit. Assuming without deciding that a demand by plaintiff for an accounting was essential, we note that plaintiff testifies that he endeavored to obtain a settlement with the defendants. In his letter of August 23, 1910, to Fred S. Morris, after stating that it was unnecessary to go into detail as to the time which had elapsed since the sale of the Oregon Water Power & Railway Company, and that he felt that the assurances he had received were misapplied, he said: ''I am now at a period in life where I feel, in justice to myself, that I should put my house in order and have matters adjusted with a record

which would not be misunderstood in the event of anything happening to me. \* \* Also, I would like to know if it is your intention to further consider me when the control of the Jersey Central Traction is disposed of, and to what extent. My affairs have been left largely in your hands in an unsettled condition, as I have confidence in your integrity for doing what was equitable and fair, and assume you will be glad to advise what consideration I am to be allowed so I can get my affairs into business shape.'' This letter may be construed as a demand, or it may be termed a declaration of war, when we consider that a close, business, and friendly relation existed between the parties. It indicates Hurlburt's desire for a settlement, and for his property to be put in his own name. Mr. Morris answered this letter on September 19, 1910, and stated that upon his return he would like to have the plaintiff come into the office and adjust his affairs. The amounts that had been advanced by the defendants to the plaintiff the trial court allowed as payment. Those items are not called in question.

5. The trial judge heard the witnesses testify, and his findings of fact should be given great weight.

We think the decree of the lower court was right, and it is affirmed.                                              AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.