Argued October 13, affirmed November 23, 1926.

## SUSANA M. FINDLEY TEMPLETON *v.* W. H. HOLLINSHEAD ET AL.

(250 Pac. 747.)

**Trusts—Statute of Frauds Held Inapplicable to Cases of Constructive Trust Resulting from Fraud of Party Receiving Property (§ 808, subd. 2, Or. L.).**

1. Section 808, subdivision 2, Or. L., requiring agreement to answer for debt of another to be in writing, *held* inapplicable to constructive trust created by fraudulent acts of person receiving property.

**Trusts—Constructive Trusts Arise Independent of Any Actual or Presumed Intention of Parties.**

2. Constructive trusts arise purely from doctrines of equity, independent of any actual or presumed intention of parties to create trust.

**Account.**

3. That equitable claim or trust is involved is sufficient to give court of equity jurisdiction of suit for an accounting.

**Equity—In Suit Alleging Defendants' Action to Defraud Plaintiff of Property, Court may Impress With Trust, in Favor of Plaintiff, Mortgage Given by One Defendant to Another.**

4. In suit by guardian, charging that defendants acted together to defraud ward of her property, court may impress with trust, in

---

1. Application of statute of frauds to constructive trusts, see notes in 95 Am. St. Rep. 626; 12 Ann. Cas. 542; 20 L. R. A. (N. S.) 301; 2 L. R. A. 662. See, also, 26 R. C. L. 1233.

2. See 26 R. C. L. 1232.

3. See 1 R. C. L. 224.

favor of ward mortgage given by one defendant to another to secure loan, since equity, having obtained jurisdiction of cause for one purpose, holds it for all connected purposes.

---

Equity, 21 C. J., p. 116, n. 7, 8, p. 134, n. 5, p. 137, n. 24.
Trusts, 39 Cyc., p. 169, n. 10, 11  New, p. 170, n. 19, 21, p. 171, n. 23, p. 172, n. 32, p. 193, n. 8.

From Deschutes: T. E. J. DUFFY, Judge.

Department 2.

AFFIRMED.

For appellants there was a brief over the names of *Mr. H. H. De Armond* and *Mr. Ross Farnham,* with an oral argument by *Mr. De Armond.*

For respondent there was a brief and oral argument by *Mr. Jay H. Upton.*

BROWN, J.—Charles Findley, as guardian of his mother, Susana M. Findley Templeton, instituted suit against her brother, W. H. Hollinshead, and his three sons, W. C., Cecil G. and Dean Hollinshead, charging them with acting together in pursuance of a fraudulent scheme to wrong and cheat her out of her property. The plaintiff prayed for an accounting and for other equitable relief. Based upon the evidence adduced by the respective parties, the court ordered that the plaintiff recover judgment against defendant W. H. Hollinshead, the brother, and against W. C. Hollinshead, one of the sons, for $1,742.59; that certain property embracing a store building and a stock of goods belonging to W. C. Hollinshead be impressed with a trust in favor of the plaintiff; and that certain mortgages made and executed by W. C. Hollinshead to his father, W. H. Hollinshead, for the purpose of securing a promissory note for the sum of $5,000, be likewise impressed with a trust in

favor of plaintiff, as security for the payment of the judgment of $1,742.59. The suit was ordered dismissed as to Cecil G. and Dean Hollinshead. The defendants, appealing to this court, assert that the trial court erred in not granting defendants' motion to dismiss the suit at the close of plaintiff's case in chief; in rendering any judgment or decree against defendant W. H. Hollinshead, and in making the judgment and decree a lien.

At the time of the trial of this cause, Mrs. Susana M. Findley Templeton was about 69 years of age, weak in body and mind. In 1914 her first husband died at Marcola, Lane County, Oregon, where they had been conducting a store. Soon after his death, she disposed of her stock of goods and banked the money. Later she married one Templeton, now deceased. In 1921, while at Marcola, she became very ill and her brother, W. H. Hollinshead, then residing at La Pine, Central Oregon, came to her assistance. He advised her to turn all of her property, real and personal, into money, and to take up her residence with him. For nearly two years she dwelt with the brother, paying him therefor $1 per day and performing all of the household duties except that of preparing breakfast for the family. The testimony shows, as found by the trial court, that she had unlimited confidence in her brother, and in his sons. Prior to moving to La Pine to reside with her brother, she had loaned various sums of money to W. C. and Cecil G. Hollinshead, two of the sons, which they used in buying motor-trucks. These loans were secured by mortgage on the trucks, but they were never paid and the trucks have long been worn out and rendered useless. In 1922 W. C. Hollinshead, with the assistance of his father, succeeded in borrowing the additional $1,700 for which judgment

was rendered in the court below. The testimony shows that, at the time she made these loans, aggregating something over $1,700, the plaintiff's ward was incapable of managing her affairs, and that she relied and acted upon the advice of her brother, who promised and agreed, in consideration of her making such loans, that he would see that the sums so loaned were repaid. There is testimony to the effect that he had theretofore taken from his son, W. C. Hollinshead, a mortgage in the sum of $5,000, for the purpose of securing a note in that amount executed by the son to him. This mortgage he delivered, unrecorded, to his sister, and told her that he was giving it to her as security for her loan to W. C. Hollinshead, the son. Later, he procured another mortgage on the same property from his son to secure the same note, which mortgage he caused to be recorded.

About the time Mrs. Templeton had loaned to her brother and his sons all the money she possessed, her son came to pay her a visit and see how she was getting along. On learning of the condition of her affairs and having been told by her that she couldn't get any of her money back—that the boys wouldn't do anything about it—and that she needed somebody to help her, he petitioned the county court and was duly appointed guardian. He then proceeded to try to get her debtors to pay. Failing in that, he brought this suit.

1. For the purpose of releasing Mrs. Templeton's brother from the obligation of his promise to her to pay the debt of his son, the defendants invoke Section 808, subdivision 2, Oregon Laws, which provides that an agreement to answer for the debt, default or miscarriage of another is void, unless the same, or some note or memorandum thereof expressing the consideration, be in writing. The statute of frauds

has no application to cases where the law raises a constructive trust by reason of the fraudulent acts of the person receiving property: *Parrish* v. *Parrish,* 33 Or. 486 (54 Pac. 352); 26 R. C. L. 1233; 3 Jones' Commentaries on Evidence, § 425; 1 Abbott's Trial Evidence (3 ed.), p. 648; Bogert on Trusts, p. 118.

"The statute of frauds has no application to constructive trusts. They are created by equity, regardless of whether the evidence on which they are based is oral or written, whether the property involved is real or personal." Bogert on Trusts, § 36.

The following much-quoted section from Pomeroy's Equity relating to the establishment of constructive trusts is pertinent:

"In general, whenever the legal right to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same * * ; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust." 3 Pomeroy's Equity Jurisprudence (4 ed.), § 1053.

2, 3. Constructive trusts arise purely from the doctrines of equity, independent of any actual or presumed intention of the parties to create a trust: 1 Perry, Trusts, § 166; Bisph. Eq., § 91. The fact that an equitable claim or trust is involved is sufficient to give a court of equity jurisdiction of a suit for an

accounting: *Paul* v. *Land.* 15 Or. 442 (17 Pac. 81);
*Hurlburt* v. *Morris,* 68 Or. 259 (135 Pac. 531); *Penn*
v. *Ingles,* 82 Va. 65.  In the case last cited the court
quotes the following from Judge STORY:

" 'Lord Redesdale has justly said that, in a com-
plicated account, a court of law would be incompetent
to examine it at *nisi prius* with all the necessary ac-
curacy; and until the result of the account is known,
the justice of the case cannot appear.' And, says the
same author, 'wherever the account stands upon equi-
table claims, or has equitable trusts attached to it,
there is no doubt that the jurisdiction is absolutely
universal, and without exception.' " *Penn* v. *Ingles,*
82 Va. 70, 71.

See, also, *Tillar* v. *Vook,* 77 Va. 477, 2 Story's Eq.
Jur., §§ 441, 442.

4. The appellant questions the authority of a court
of equity to impress with a trust in favor of plain-
tiff's ward the mortgage given by W. C. Hollinshead
to his father, W. H. Hollinshead.  That a court of
equity, having obtained jurisdiction of a cause for
one purpose, holds it for all purposes connected there-
with, is the accepted doctrine in this jurisdiction:
*Heatherly* v. *Hadley,* 4 Or. 1; *Howe* v. *Taylor,* 6 Or.
284; *Phipps* v. *Kelly,* 12 Or. 213 (6 Pac. 707); *Shultz*
v. *Shively,* 72 Or. 450 (143 Pac. 1115); *Templeton* v.
*Bockler,* 73 Or. 494 (144 Pac. 405); *Oregon-Washing-
ton R. & N. Co.* v. *Reed,* 87 Or. 398 (169 Pac. 342,
170 Pac. 300); *Everson* v. *Haun,* 106 Or. 612 (213
Pac. 135).

Bearing in mind the close family relationship of
the parties hereto—that of sister and brother—and
the fact that this enfeebled old woman placed implicit
confidence in her brother and his sons, the reason for
Mrs. Templeton's believing and acting upon the rep-
resentations of her brother when he told her he would

see that her loans of money to his son were repaid, is obvious. The defendants' testimony tends to corroborate that of the plaintiff. It shows that Mrs. Templeton's mind was weakened, and that she was easily persuaded. The record shows the influence brought to bear upon the aged woman for the purpose of inducing her to make a will in favor of her brother. It further shows that her brother and his sons borrowed from her about all the money she possessed, giving as security therefor personal property that the sons proceeded to render worthless by use; and it shows, in addition, that her brother delivered to her, as security for the $1,700 loan for which she recovered judgment in the lower court, an unrecorded mortgage given to him by his son, W. C. Hollinshead. These transactions, in their entirety, savor of fraudulent intent on the part of defendants in wresting from this lone woman, old and sick, all that was rightfully hers.

This case should be affirmed. It is so ordered.

AFFIRMED.

MCBRIDE, C. J., and BEAN and BELT, JJ., concur.