[Filed April 20, 1885.]
## ROBERT PHIPPS *v.* SARAH J. KELLY.

MARRIED WOMEN—POWER TO CONTRACT—FAMILY EXPENSE.—The effect of the act regulating the rights and liabilities of married women (approved October 21, 1878) was to enable her to contract and incur liabilities, and such contracts and liabilities may be enforced the same as if she were unmarried. For family expenses she may be sued jointly with her husband, or separately, and a personal judgment rendered against her.

REMEDIES—LEGAL RIGHTS—JURISDICTION AT LAW.—When a right is of such a character that a court of law is authorized to take cognizance of it, and to afford a plain, adequate, and complete remedy, the general principle is that the plaintiff must enforce his right at law.

ID.—EQUITABLE JURISDICTION.—But when a court of equity originally had jurisdiction in any class of cases for which the proceeding at common law did not then afford an adequate remedy, such jurisdiction will not be lost by reason of subsequent legislation conferring on courts of law authority to decide such cases, unless there are negative words excluding the jurisdiction of equity.

ID.—When a court of equity has taken jurisdiction for one purpose, it will generally retain the case until the whole subject is disposed of; but the primary and original object of the suit must in such case be clearly within its jurisdiction

DOUGLAS COUNTY.  Defendant appeals.  Affirmed.

The facts sufficiently appear in the opinion.

*William R. Willis,* for Respondent.

When a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all the matters at issue. (See 1 Pom. Eq. Juris. §§ 181, 231; *Oelrichs* v. *Spain,* 15 Wall. 211; *Bradley* v. *Bosley,* 1 Barb. Ch. 125.) It is too late, after a defendant has put in an answer submitting himself to the jurisdiction of the court, without objection, to insist that the complainant has a perfect remedy at law. (*Wiswall* v. *Hall,* 3 Paige Ch. 313; *Underhill* v. *Van Cortlandt,* 2 Johns. Ch. 339.) That the expenses of the family are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately. (Sess. Laws 1878, p. 94, § 10; *Watkins* v. *Mason,* 11 Oreg. 72; S. C. 4 Pac. Rep. 524, and cases cited.)

*C. Ball,* for Appellant.

The complaint is for a single cause of action, only, on special contract. (Civ. Code, p. 191, § 390.) If not for a single cause of suit then there is a misjoinder. (*Nichols* v. *Drew,* 94 N. Y. 22.) The testimony contradicts and makes out a different case from "the future advances alleged in the bill of complaint," and should be dismissed. (*Elliott* v. *Amazon Ins. Co.* 49 Mich. 579; *Booth* v. *Thompson,* 49 Mich. 73.) Where the equities are disproved the court will not retain the bill. (*Graves* v. *Boston Marine Ins. Co.* 2 Cranch, 419; *Dugan* v. *Cureton,* 1 Ark. 31; S. C. 31 Am. Dec. 727.)

LORD, J.—The defendants were husband and wife. The plaintiff, who is the assignee of Marks & Co., bases his right to relief upon the grounds, (1) that the indebtedness, consisting of a promissory note, book-account, and goods, wares, and merchandise, which were sold and delivered as future advances, was by agreement of the parties secured by a deed intended to operate as a mortgage, and executed by the defendants upon the separate property of the wife; (2) that the whole amount of such indebtedness was made and incurred for expenses of the family in the purchase of goods, wares, and merchandise by the defendants as husband and wife, and that the same were received and used in their family, consisting of the defendants and their children. The wife denied that the deed was executed as a payment of the whole of such indebtedness, but alleged that it was executed and given only as a security for the payment of the note, and no more; but she did not deny the correctness of the claims or amounts, nor that the goods, wares, and merchandise were purchased for and used by the family, or that they were the expenses of the family. After a trial upon the merits, the court found that the deed was executed and intended to operate only as a security for the payment of the note, but that the balance of the indebtedness was contracted for family expenses, in the purchase of goods and merchandise, which were received and used in the family of the defendants, and was properly chargeable upon the property of the wife, and

made a decree accordingly. It is to test the correctness of the decree in this regard that the wife has brought this appeal.

Section 10 of the Act of 1878 provides " that the expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately." (Sess. Laws 1878, p. 94.) The general effect of this act was, undoubtedly, to extend and enlarge the rights and liabilities of married women much beyond previous limitations. The disability to make contracts and incur liabilities, which formerly existed at law, it removed, and now a married woman may do either, and her contracts and liabilities may be enforced by or against her to the same extent and in the same manner as if she were unmarried. For liabilities incurred as a family expense she may be sued at law jointly with her husband, or separately, and a personal judgment may be rendered against her. This was expressly recognized by this court in *Watkins* v. *Mason*, 11 Oreg. 72. And see also *Polly* v. *Walker*, 60 Iowa, 88; *Jones* v. *Glass*, 48 Iowa, 345. There is, then, under the statute, a remedy at law which may be enforced against her for an indebtedness incurred as a family expense, for which her property may become liable.

It is insisted by counsel for the appellant that there is a complete remedy at law for the matter upon which that portion of the decree appealed from is based, and that as to it the decree ought to be reversed, and the complaint dismissed. His contention is to the effect that this objection is jurisdictional, and ought to be enforced by the court *sua sponte.* This is the rule in the United States courts when the objection is well taken, though it is not raised by the pleadings, nor suggested by counsel. (*Oelrichs* v. *Spain*, 15 Wall. 228.) Our Code provides that " the enforcement or protection of a private right, or the prevention of or redress for an injury thereto, shall be obtained by a suit in equity, in all cases where there is not a plain, adequate, and complete remedy at law"; but this, probably, is merely declaratory of the pre-existing rule. (*Oelrichs* v. *Spain, supra.*) When the right is of such a character that a court of law is

authorized to take cognizance, and is competent to render a judgment which affords a plain, adequate, and complete remedy, the general principle undoubtedly is that the plaintiff must enforce his right at law. In such case, the right being purely legal, and disentangled of any equitable feature, and the remedy at law being adequate and efficient to secure the ends of justice, and its prompt administration, there is no ground for equitable interference, and its jurisdiction should be rejected. A strictly legal right, unaffected by any equitable incident, for which there is a legal remedy adequate and speedy for its enforcement or protection, is a not properly a subject-matter within the legitimate province of equity, and of which equity could take cognizance without depriving the defendant of his constitutional rights to a trial by jury. This is a highly valued right, to which the people are attached, for the legal settlement of disputed questions of fact, and which they have secured by constitutional guaranty, to the end that no one should be deprived of it except for some proper or specified cause. As relevant to the particular subject, Hunt, J., said:—

"The right to a trial by a jury is a great constitutional right, and it is only in exceptional cases, and for specified causes, that a party may be deprived of it. It is in vindication of this great principle, and as declaratory of the common law, that the Judiciary Act of 1789, in its sixteenth section, declares ' that suits in equity shall not be sustained in either of the courts of the United States in any case where adequate and complete remedy may be had at law.'" (*Grand Chute* v. *Winegar*, 15 Wall. 375; *Insurance Co.* v. *Bailey*, 13 Wall. 616; *Hipp* v. *Babin*, 19 How. 271–278; *Parker* v. *Winnipiseogee Lake etc. Co.* 2 Black, 550, 551.)

As a result of this doctrine, stated in its broadest terms, the general principle deducible from the authorities and text-writers, with perhaps some qualification or limitation, is that where the right or interest to be protected is of a purely legal character, and a court of law can, by its mode of procedure and judgment, do complete justice to the matter in controversy as a court of equity, the remedy is at law, and the jurisdiction of equity will

be rejected. "When," says Mr. Pomeroy, "the primary right of the plaintiff is purely legal, arising either from the non-performance of a contract or from a tort, and the money is sought to be recovered as a debt or damages, and the right of action is not dependent upon or connected with any equitable feature or incident, such as from mistake, accident, trust, accounting, contribution, and the like, full and certain remedies are afforded by action at law, and equity has no jurisdiction. These are cases especially within the sole cognizance of law. (Pom. Eq. Juris. § 178, and n.) The relief sought in such cases is in no sense equitable, and the jurisdiction in equity should be rejected by the court itself as without its domain. (*Howard* v. *Jones,* 5 Ired. Eq. 75; *Echols* v. *Hammond,* 30 Miss. 177; *Stewart* v. *Mumford,* 80 Ill. 192; *Bennett* v. *Nichols,* 12 Mich. 22; *Coquillard* v. *Suydam,* 8 Blackf. 25.) A court of equity cannot create a lien on real estate to secure a personal debt not contracted on its credit, and not charged upon it by agreement (*Bennett* v. *Nichols, supra*); nor is the remedy in equity, but at law, for a debt for goods sold and delivered. (*Coquillard* v. *Suydam, supra.*)

Under section 10 the property of the husband, like the wife, is chargeable for family expenses; but it is apprehended that on liabilities incurred by him for family expenses, in the purchase of goods and wardrobe used in the family, the remedy is exclusively at law, unless the transaction is in some way equitably connected. But now he, or she, or both of them, may be sued at law, and the judgment obtained enforced against the property for a debt incurred for family expenses (*Watkins* v. *Mason, supra*); but there is this difference, that the husband was liable originally to an action at law for such debts, but the wife has only become so by virtue of the statute. With him the right to contract, and the capacity to sue or be sued at law, existed originally; and the remedy at law being adequate and complete to attain the ends of justice without the aid of equity, there could be no pretense for the exercise of chancery jurisdiction. With her the case was wholly different. The law recognized in her no separate existence or identity. It was merged in her hus-

band. She never had the capacity to contract, nor to sue or be sued. Originally, at law, for her or against her, there could be no remedy. All her rights and liabilities, prior to the statute, lay within the domain of equity. It was only in equity that her rights, interests, and estate could be maintained, protected, or redressed; and it was only there that she was treated as a *femme sole,* and her contracts recognized and enforced against her separate property. All her rights and liabilities hitherto being available only in equity for the want of any remedy at law, the doctrine of the cases cited, and the principle deducible from them, can have no application here, unless the statute has superseded or ousted the equitable jurisdiction.

The general rule established by the authorities is that when a court of equity originally had jurisdiction in any class of cases, for which the ordinary proceeding at common law did not then afford an adequate remedy, that jurisdiction will not be lost by reason of subsequent legislative enactments which confer on courts of law authority to decide in such cases, unless there are negative words excluding the jurisdiction of courts of equity. This principle is thus stated by Judge Story: —

"In modern times courts of law frequently interfere, and grant remedies under circumstances in which it would have certainly been denied in earlier times, and sometimes the legislature, by express enactments, have conferred on courts of law the same remedial faculty that belongs to courts of equity; now in neither case, if courts of equity obtained and exercised jurisdiction, is that jurisdiction overturned or impaired by this change of authority at law in regard to legislative enactments? For, unless there are prohibitory or restrictive words, the uniform interpretation is that they confer concurrent and not exclusive remedial authority." (Story Eq. Juris. § 80.)

The same principle is thus stated by Mr. Pomeroy: —

"Whenever the statutes conferring the new jurisdiction upon the law courts are permissive only, or whenever they not only contain no express prohibitive language, but also do not indicate from all these provisions, taken together, any clear intent to restrict the equitable jurisdiction, that jurisdiction remains

unaffected, and may be still exercised, even though the rights protected and the remedies enforced have, by the statutes, been made legal, and a relief ordinarily sufficient, even amply sufficient and complete, may be obtained through the actions at law. If the statute is expressly prohibitory upon the equity courts, or if it shows a clear and certain intent that the equitable jurisdiction is no longer to be exercised over the matters within the scope of the enactments, then such jurisdiction of equity in the particular class of cases must be considered as virtually abrogated." (Pom. Eq. Juris. 182, and authorities cited in the note.)

As a result of this doctrine a creditor may resort to either forum to enforce his claim against the separate property of a married woman, unless the intent to exclude the equitable jurisdiction is clearly manifested by the statute. This has been expressly decided. In *Mitchell* v. *Otey*, 23 Miss. 236, it was held that the provisions of the "Married Woman's Law" of 1846 do not oust the original jurisdiction of courts of equity in cases affecting the estates of married women, and that a creditor may assert his demands against the husband and wife at law at his election, the two jurisdictions being concurrent in such cases. Now, it must be conceded there are no negative words in the section nor the statute, excluding the equitable jurisdiction, nor do we discover any intent, expressly or by implication, to make the remedy at law exclusive in cases where the right or estate to be protected, enforced, or redressed was originally available only in equity. All that can be said is that the liability of the property of the wife for family expenses, under the section, has been extended or enlarged beyond what it formerly was. Although primarily the husband is the head of the household, and as such bound to provide for his family, yet the wife's separate estate was chargeable in equity for necessaries furnished on her credit and intended to be a charge against her estate. "Family expenses" may include necessaries, and more. In *Smedley* v. *Felt*, 41 Iowa, 590, the court, in commenting upon a section of the statute identical with this, said:—

"The language of the statute is general. It applies to the expenses of the family without limitation or qualification as to

the kind or amount. . . . . What is necessary depends very much upon the wealth, habits, and social position of a party; what is a family expense depends upon none of these considerations. . . . . The only criterion which the statute furnishes is, was the expenditure a family expense, was it incurred for, on account of, and to be used in the family?"

But this, in fact, is only an enlargement of the subject-matter upon which equity acted; it does not touch or impair the power or jurisdiction of equity. The object of these enabling statutes generally is, unless the intent is clearly otherwise expressed, to bring and regulate the legal rights and liabilities in harmony with equitable principles. The jurisdictions are concurrent, and the fact of a remedy at law does not, in such case, oust the equitable jurisdiction, and the objection, therefore, is unavailing. It was also objected that, although the facts stated might authorize the interposition of equity to charge liabilities incurred for family expenses against the property of a married woman, the subject of this suit was based more properly upon the agreement under which the deed was given as a security and to operate as a mortgage. But this is not the case. The facts set up two grounds upon which relief is based. It is true that they might have been better stated, but there is not a defect of substance, and this is admitted.

The facts stated give full notice of the grounds upon which it is sought to charge the property of the defendant, and a trial upon the merits has established the liability and the right to the relief. It is upon the facts that the courts grant relief, although informally stated, where not inconsistent with the purposes of the suit. Informality of statement, which involves no defects of substance, cannot be taken advantage of after trial and judgment. It is, no doubt, true that where the suit is simply for foreclosure, based upon the terms of the contract and mortgage, no debt, except such as is authorized by it, can be decreed to be paid under it. In such case the mortgage cannot be extended to a debt not embraced in its provisions. (*Tunno* v. *Robert*, 16 Fla. 738.) But that is not this case. Here, the facts constituting the grounds for the relief sought to

be established are distinctly stated and met, and the court is competent to grant relief not inconsistent with them. In the course of the argument it was said that a court of equity, having taken cognizance of a case, will retain it until all matters connected with it are settled. This is not strictly correct. "When a court of equity has taken jurisdiction of a case for one purpose, it will generally retain the case until the whole subject is disposed of; but the primary and original object of the suit must be one clearly within its jurisdiction, and even then the court will not always retain the bill." (*Dugan* v. *Cureton*, 1 Ark. 31.) Here the primary and original object of the suit, based upon the facts alleged, is to charge the property described in the complaint; and an examination of the record satisfies us there was no error.