Argued September 22, affirmed September 29, 1914.

# SHULTZ v. SHIVELY.

## (143 Pac. 1115.)

**Pleading—Objections and Waiver—Pleading Over.**

1. Where defendant answers after the overruling of his demurrer to the complaint, the complaint is to be construed most strongly in favor of the pleader, and will be sustained where the defects are in the statement, but not in the cause of action.

**Logs and Logging—Liens—Suits to Foreclose—Pleading.**

2. In a suit to foreclose liens on logs, where the logs are described as being from standing timber on a mountain about five miles. northwest of a named town, being United States land, the logs being distributed along the donkey road from the government land to a certain railroad, being about 100,000 feet of merchantable logs, more or less, not marked or branded, such description is fatally defective.

**Logs and Logging—Lien—Suit to Foreclose—Pleading.**

3. Under Section 7461, L. O. L., giving a lien to laborers in logging camps upon the logs, and Section 7467, requiring the filing of a claim with the county clerk, containing a sufficient description of the property charged, a description in a complaint to foreclose a lien of logs from certain premises marked and branded with letters "U. S.," a part of them located at the millyard of a certain mill, and a quantity of ties, bridge timbers, mining timbers and other manufactured lumber, manufactured out of such logs and located at the same place, is sufficient, where the defendant has answered the complaint after his demurrer thereto has been overruled, under the rule that the statutes should be liberally construed for the benefit of the laborer, to sustain a decree for a lien on the logs so marked and the lumber manufactured from such logs and located at the mill.

**Logs and Logging—Liens—Foreclosure—Evidence.**

4. In a suit to foreclose a logging lien, oral evidence is admissible to aid the description of the property given in the complaint.

**Equity—Jurisdiction—Retention of Jurisdiction Acquired.**

5. When a court of equity has acquired jurisdiction over some portion of a controversy, it will proceed to decide the whole issues and award complete relief, though the rights of the parties are strictly legal and the final remedy is of a kind that may be granted by a court at law.

> [As to rule that equity on assuming jurisdiction for one purpose will retain it for all purposes, see note in Ann. Cas. 1912A, 803.]

**Logs and Logging—Logging Lien—Foreclosure—Jurisdiction.**

6. A court of equity having acquired jurisdiction of a suit to foreclose a logging lien, may enter a decree for damages, as authorized by Section 7476, L. O. L., against a defendant who has rendered it

difficult or impossible to identify any of the property covered by the lien, or has injured or destroyed it.

**Logs and Logging—Liens—Property Subject.**

7.   Where laborers are entitled to liens on logs under Section 7461, L. O. L., giving a lien to laborers in logging camps, their right to such liens extends to ties, timbers and lumber manufactured from the logs.

**Logs and Logging—Liens—Accounting.**

8.   Where it was agreed that unmarked logs distributed along a road should be collected, sold, and the proceeds applied on logging liens, while the lien claimants should show the items of expense charged against such proceeds, yet if they fail to do so and there is no evidence tending to show that the net proceeds exceeded the amount credited on the lien, the account will be sustained.

From Marion: WILLIAM GALLOWAY, Judge.

This is a suit by Wm. Shultz, Abe Charpolloz, Mrs. Jessie Brown, Lewis Price, Fred Ringlish, John Mikel, G. W. Ray, M. Weston, Burr Brown and George Earhart, against John Shively, J. F. Hertzler and John Doe to foreclose a logging lien. From a decree in favor of plaintiffs, the defendant J. F. Hertzler appeals. The facts are fully set forth in the opinion of the court.          AFFIRMED.

For appellant there was a brief over the names of *Mr. Elisha P. Morcom* and *Miss Frances M. Kemp,* with an oral argument by *Mr. Morcom.*

For respondents there was a brief over the name of *Messrs. McNary, Smith & Shields,* with an oral argument by *Mr. John H. McNary.*

Department 2.   MR. JUSTICE RAMSEY delivered the opinion of the court.

During the year 1911, the defendant J. F. Hertzler was engaged in operating a sawmill at Abaqua, about a mile and a half north of Silverton in Marion County. On the 11th day of May, 1911, he entered into a con-

tract with the defendant John Shively, by the terms
of which said Shively undertook to cut a large amount
of sawlogs for the defendant Hertzler on Granite
Mountain in said county, near Detroit, for the agreed
price of $3.50 per thousand feet, delivered on the cars.
This timber was on government land near the Corvallis
& Eastern Railroad. Each of the plaintiffs worked for
the defendant Shively in cutting said timber into saw-
logs and delivering it to Hertzler upon the cars. The
defendant Shively, under said contract, cut and deliv-
ered to Hertzler between 374,730 and 400,000 feet of
logs. They were delivered to him on the cars, and he
shipped them by rail to his sawmill at Abaqua and
placed them in his millyard there. Each of said logs
was branded with the capital letters, "U. S.," for
identification. In addition to the logs referred to
*supra,* Shively cut for Hertzler, under said contract,
about 70,000 feet of logs at the same place that the logs
referred to *supra* were cut; but they were not delivered
upon the cars, nor were they shipped to him at Abaqua.
*They were not marked or branded.* The defendant
Shively made default in the payment to the plaintiffs
for their labor, and each of them prepared and had
recorded in the proper records of Marion County a lien
for his said work and labor so performed. Each of
the liens was recorded on the 11th day of October,
1911. On the 26th day of November, 1911, this suit
was commenced for the foreclosure of said liens. The
complaint contains a separate cause of suit for each
of the 10 plaintiffs, and hence it is too lengthy to be
set forth in this opinion. The defendant Shively made
no appearance, and the defendant Hertzler filed a gen-
eral demurrer to the complaint, alleging that it "does
not state facts sufficient to constitute a cause of suit."

The demurrer was overruled, and the defendant Hertzler filed an answer, denying most of the allegations of the complaint, and setting up some affirmative matter. The reply put in issue most of the new matter of the answer. After hearing the evidence offered by the parties, the court below made findings and entered a decree in favor of the plaintiffs. The defendant Hertzler appeals.

1. By filing an answer denying most of the allegations of the complaint the defendant waived his said demurrer. Discussing the question of *waiver* by pleading over, after a demurrer had been overruled, this court, in *Olds* v. *Cary,* 13 Or. 365 (10 Pac. 787), says:

"The objection was evidently good upon demurrer, though I do not think that the complaint was fatally defective. I think that it was good after verdict, and that the appellants waived the objection to it by answering over. If they had stood upon their demurrer, however, they would have been able to insist upon the point in this court; but, under the circumstances, I think the error was cured. *The defect was in the statement, and not in the cause of action,* and could therefore be waived by going to trial upon the merits. This, I believe is elementary."

In *Oregon & C. R. R. Co.* v. *Jackson County,* 38 Or. 597 (64 Pac. 309) (an equity case), the court says:

"When tested by demurrer, the rule is, as counsel suggest, that the allegations are to be construed most strongly against the pleader; but this condition is waived by pleading over, and the question becomes one against all reasonable intendments."

2. The point urged against the sufficiency of the complaint is that it does not describe the property intended to be subjected to the liens with sufficient cer-

tainty.    The property covered by the liens is described
as follows:

"Upon a quantity of sawlogs from some standing
timber, on Granite Mountain, located about five (5)
miles northwest of the town of Detroit in Marion
County, Oregon, being United States land.    Said saw-
logs being distributed, scattered and now lying along
the donkey road leading from the government land,
from whence they were removed, to the Corvallis &
Eastern Railroad track, being about 100,000 feet of
merchantable logs, more or less, which were cut in
Marion County, Oregon, on the place heretofore de-
scribed, without being marked or branded, and are
now lying in said county along the road aforesaid.
Also a quantity of logs removed from the aforesaid
described premises, being about 500,000 feet of market-
able logs, more or less, *marked and branded with the
letters 'U. S.,'* and a part of which are now located at
the millyard of the Abaqua mill, located about one and
one-half miles north of Silverton in Marion County,
Oregon.    Also a quantity of ties, bridge timbers, min-
ing timbers and other manufactured lumber, *manufac-
tured out of said logs, and located at the same place.*"

As to the 100,000 feet of logs first referred to in said
description, we are inclined to think that the objection
is well taken.    These logs were scattered and lying
along the donkey road leading from the government
land, where they were cut, to the railroad.    They were
unmarked.    We think that the description as to them
is fatally defective.    But it appears from evidence of
the defendant and other persons that the plaintiffs and
the defendant, *after the liens were recorded,* agreed
that the plaintiffs should gather up these scattered logs
and sell them and apply the net proceeds of the sale
upon the liens.    This was done, and $150 is to be
credited on the liens as the net proceds of the sale of

said logs. The amount of said logs was about 70,000 feet. The defect in the description of said 100,000 feet of logs does not affect the other property covered by the liens.

3. The other property covered by the liens is described as:

"Also a quantity of logs removed *from the aforesaid described premises,* being about 500,000 feet of marketable logs, more or less, *marked and branded with the letters 'U. S.,' and* a part of which are now located at the millyard of the Abaqua mill, located about a mile and one half north of Silverton in Marion County, Oregon; also a quantity of ties, bridge timbers, mining timbers and other manufactured lumber, *manufactured out of said logs and located at the same place.*"

This description states that the logs referred to were obtained from the United States land referred to; that the logs are at the millyard at the Abaqua mill, about a mile and a half north of Silverton, Marion County, Oregon; that the quantity of logs is about 500,000 feet; that they are "marketable," and that they *are marked and branded with the letters "U. S."* Some of said logs were then at said millyard in the form of logs, and the others were there, but they had been manufactured into ties, bridge timbers, mining timbers and other manufactured lumber.

These liens are claimed under Section 7461, L. O. L., and the plaintiffs were entitled to perfect liens upon said logs, to secure the payment of the amounts due them for their labor. Section 7467, L. O. L., provides the method of perfecting such liens, and it is in part as follows:

"Every person * * must file for record with the county clerk of the county in which such sawlogs, spars, piles, and other timber was cut, or in which such lum-

ber was manufactured, a claim containing a statement of his demand, and the amount thereof, after deducting, as near as possible, all just credits and offsets, with the name of the person by whom he was employed, with a statement of the terms and conditions of his contract, if any; and in case there is no express contract, the claim shall state what such service, work, or labor is reasonably worth; and it shall also contain a description of the property to be charged with the lien, sufficient for identification with reasonable certainty," etc.

Referring to the sections mentioned *supra,* this court, in *Day* v. *Green,* 63 Or. 295 (127 Pac. 773), says: *"These lien statutes are remedial, and should be liberally construed in the interest of the laborer."*

In *Alderson* v. *Lee,* 52 Or. 97, 98 (96 Pac. 236, 237), the court says *inter alia:*

"Our statute * * requires only that the property be described with reasonable certainty. True, the form there given seems to indicate that the logs should be designated *by marks,* and this might, in some instances, be essential to a valid lien, such as where the defendant's logs may be on the same tract of land, or intermingled with those of other owners, or with logs nonlienable; but, where no other property is to be found sufficiently near as to cause confusion, the reason for this suggestion (that logs be marked) in the form given, ceases. * * And no definite rule can be given as to when it may be deemed substantially followed. This must depend upon the facts and circumstances in the cases as they may arise. * * *Any description from which a stranger, aided by the testimony adduced at the trial, could, with reasonable diligence, locate the property is sufficient to meet the requirement of the law."*

Volume 8 of the Ency. of Evidence, pages 666, 667, says:

"Parol or other extrinsic evidence is admissible to identify the mortgaged chattels, or to make intelligible and certain an ambiguous or general description."

27 Cyc. 1137, says of descriptions:

"The nature, location and extent of the property covered by a mortgage must be determined by the description of it contained in the mortgage itself, interpreted according to the established rules of construction, *and aided by extrinsic evidence, for purposes of identification* and limitation, where that is necessary by reason of the *uncertainty or ambiguity* of the description," etc.

The evidence shows that between 374,730 and 400,000 feet of sawlogs were cut on the government land referred to, by Shively, and by him delivered to the defendant Hertzler on the cars near where they were cut, and by said defendant, shipped to his mill at Abaqua, and there placed in his millyard, and that each log was marked or *branded with the letters "U. S.," and that there were no other logs at said millyard thus marked or branded.* The evidence shows that there were very few logs at said millyard other than those marked as stated *supra.* The notices of liens were recorded on October 11, 1911. Prior to that date most of said logs marked "U. S." had been cut into ties, timbers or other lumber, and some thereof had been shipped away; but the evidence shows that on October 14, 1911—three days after the lien notices were recorded—there was in the defendant's millyard at Abaqua the following: Over 1,400 ties, a lot of timbers 6x8 and 8x9 and dressed lumber and clear lumber that was not dressed, amounting to more than 200,000 feet. The ties were worth about $9 per thousand feet. There seems to have been 55,920 feet of dressed lumber, worth $25 per thousand feet on the cars, and the undressed lumber

was worth $19 per thousand on the cars. In February, 1912, there were, at the defendant's millyard at Abaqua, 77,112 feet of lumber. The evidence shows that the ties, timbers and lumber referred to *supra,* were manufactured by the defendant Hertzler from the logs furnished him by the defendant Shively, as stated *supra;* that they were branded "U. S."; and that some of said logs were manufactured into lumber before the notices of liens were recorded, and the remainder, or a part thereof, were cut into lumber after the recording of said notices. The evidence shows that nearly all of said logs were cut into timbers, ties and lumber, and that the defendant Hertzler has disposed of the larger part thereof, and that the same has been shipped away since the recording of the lien notices, by the authority of said defendant.

It was stipulated in the court below that the amounts due the plaintiffs, respectively, for labor, as stated in their lien notices, are correct, and there was also evidence showing the correctness of the plaintiff's demands. It is clear from the evidence and said stipulations that the plaintiffs' claims are correct and just.

As held in *Day* v. *Green, supra,* the statutes upon which these liens are based are *remedial* and should be liberally construed for the benefit of the laborer. Construing them in that manner, we hold that the description of the property affected by said liens (excepting the unmarked logs referred to *supra,* that were sold at Albany) is sufficiently certain to create valid liens thereon in favor of the plaintiffs. About 400,000 feet of logs were cut on the government lands referred to by Shively for the defendant Hertzler and delivered to him on the cars, and Hertzler shipped them to his mill at Abaqua, and placed them in his millyard there.

Each of these logs was branded with the letters "U. S."
Before the notices of liens were recorded a part of said
logs, so branded, were cut into ties, bridge timber,
mining timbers and other manufactured lumber; but
these ties, timbers and lumber were located in the mill-
yard of Hertzler, where the logs were.

4. Oral evidence is admissible to aid the description,
as shown *supra,* and it shows that these branded logs
were shipped to the defendant's said mill and placed
in the millyard, and that the ties, timbers and lumber
referred to in said description were cut from said logs
before the liens were recorded. The defendant, be-
fore the liens were recorded, had sold and disposed of
some lumber cut from said logs; but when the liens
were recorded some of said logs were on the millyard,
and a large amount of ties, timbers and other lumber,
manufactured from said logs, were there on the mill-
yard. If said logs had not been branded, said descrip-
tion might have been insufficient for the purpose of
identification. The evidence shows that the defendant
Hertzler, after said liens were recorded, wrongfully
and without the consent of any of the plaintiffs, by
sawing portions of said logs into lumber and disposing
of it, and causing it to be shipped out of Marion
County, and by other acts of his, did render difficult,
uncertain and to some extent impossible the identifica-
tion of a large part of the property affected by said
liens, to the damage of the plaintiffs, and that there
was much more than enough of said logs branded
"U. S.," and the timbers, ties and lumber manufac-
tured therefrom, on the defendant's said millyard, at
the date of the recording of said notices of liens, to pay
the claims of the plaintiffs and costs and disbursements
of this suit, including attorney's fees and all taxable

disbursements, and that said property was subject to said liens.

5. The rule is well settled that when a court of equity has acquired jurisdiction over some portion or feature of a controversy, it may and will, in general, proceed to decide the whole issues, and award complete relief, although the rights of the parties are strictly legal, and the final remedy granted is of a kind that may be granted by a court of law: 1 Pomeroy, Eq. Jurisp., § 231; *Fleischner* v. *Citizens' Investment Co.,* 25 Or. 119 (35 Pac. 174); *Oregon R. & N. Co.* v. *McDonald,* 58 Or. 236, 237 (112 Pac. 413, 32 L. R. A. (N. S.) 117); *Heatherly* v. *Hadley,* 4 Or. 1; *Howe* v. *Taylor,* 6 Or. 284; *Phipps* v. *Kelly,* 12 Or. 213 (6 Pac. 707); *Haynes* v. *Whitsett,* 18 Or. 454 (22 Pac. 1072).

In *Haynes* v. *Whitsett,* 18 Or. 454 (22 Pac. 1072), the court says:

"It may be sufficient to say in answer to this suggestion that it is contrary to one of the most important rules upon which courts of equity proceed in the administration of justice; and that is, *when they acquire jurisdiction for one purpose, they maintain it for all purposes, and administer complete relief.* They neither invoke the aid of other courts, or permit their interference with their process."

In *Phipps* v. *Kelly,* 12 Or. 213 (6 Pac. 707), the syllabus in part is:

"When a court of equity has taken jurisdiction for one purpose, it will generally retain the case until the whole subject is disposed of; but the primary and original object of the suit must, in such case, be clearly within its jurisdiction."

6. Courts of equity have jurisdiction of suits to foreclose liens of this kind, and hence, having jurisdiction for that purpose, they should, in a proper case, enter

a decree for damages against a defendant under Section 7476, L. O. L., who has rendered it difficult or impossible to identify any of the property covered by the lien, or has injured or destroyed the same. The plaintiffs were entitled to a lien upon all of the logs marked ''U. S.'' that were at the defendant Hertzler's millyard, and the ties and timbers and lumber that were manufactured from said logs and were in his millyard on October 11, 1911 (the date of recording said notices of liens); but the evidence shows that by the wrongful acts of the said defendant, as stated *supra,* a large part of said property has been rendered difficult and impossible to identify or find. For this reason the defendant Hertzler is liable to the plaintiffs for such portion of the decree to be rendered in this case remaining unsatisfied after exhausting such portions of the property covered by said lien as can be found by reasonable diligence.

7. The plaintiffs were entitled to liens upon the logs marked ''U. S.,'' and if the defendant Hertzler manufactured a portion or all of them into ties, timbers or other kinds of lumber, their right to such liens was not impaired or destroyed thereby, but it attached to the ties, timbers and lumber so manufactured from said logs.

Referring to Sections 7461 and 7462, L. O. L., this court, in *Day* v. *Green,* 63 Or. 296 (127 Pac. 773), says:

''We think the lien in such a case should be under Section 7461, and not under Section 7462, *and that it follows the logs in their changed form.* In this case the defendant owned the logs in the timber, manufactured them into lumber, and owned the lumber when cut; and if the lien were lost to the laborer when the logs were manufactured into lumber, then, under Section 7461, the plaintiff would be remediless, because the

logs were being cut *as delivered,* but no such result was intended by that section."

8. It is claimed by the appellant that the plaintiffs did not properly account for the proceeds of the 70,000 feet of lumber that they sold at Albany. We think that they should have made a better showing in that matter than they did. They appear to have received for this lumber about $420, and they have $150 thereof to apply on the liens, the difference between $420 and $150 having, as they claim, been expended in gathering up the logs and shipping them to Albany. The plaintiffs should have shown each item of those expenditures. However, the person who kept the accounts stated that there was the sum of $150 remaining after paying the expenses, but he could not give all the items of the expenditures. We think that there was a *prima facie* showing made. There was no evidence offered tending to show that the net proceeds of the sale of said lumber exceeded $150.

We have read and considered all of the evidence and the briefs and arguments of counsel, and we are unable to find any material error in the findings or the decree of the court below.

The decree of the court below is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE BEAN concur.

MR. JUSTICE MCNARY took no part in the consideration of this case.