Submitted on brief October 29, reversed November 24, rehearing denied December 15, 1914.

# TEMPLETON *v.* BOCKLER.

(144 Pac. 405.)

**Property—Continuance of Title—Presumption.**

1. Under Section 799, subdivision 33, L. O. L., where it is admitted that the title to property is in a person November 9, 1908, it will be presumed, in the absence of evidence to the contrary, that the title continued so on November 15, 1909.

**Property — Evidence as to Title — Weight and Sufficiency — Adding Presumption to Equally Balanced Evidence.**

2. Where in an equity suit for an accounting the evidence is exactly counterbalanced by the testimony of the parties, neither of whom is impeached, but the complainant is entitled to the presumption of evidence of title, declared to be evidence by Section 793, L. O. L., admitted to have been in him, the evidence of defendant will be considered insufficient to sustain his contention.

**Trover and Conversion—Proceeds of Trust Property.**

3. Where it was agreed that the creditor should take the debtor's sheep to manage, care for and sell and account to debtor after deduction of debts, and the creditor sold the sheep, took a note and

mortgage in his own name, denying that any part of it belonged to the debtor, he is guilty of conversion.

[As to what constitutes conversion of personal property sufficient to sustain trover, see notes in 15 Am. Dec. 151; 24 Am. St. Rep. 795.]

### Trusts—"Trust"—Definition.

4. A "trust" is an equitable obligation, either expressed or implied, resting upon a person by reason of a confidence reposed in him to apply or deal with property for the benefit of some other person or for the benefit of himself and another or others, according to such confidence; it is holding of property subject to a duty of employing it or applying its proceeds according to directions given by the person from whom it was derived.

### Interest—Conversion of Trust Property—Rate of Interest.

5. A creditor converting the proceeds of property held in trust for his debtor will be charged with interest at 6 per cent per annum, though the creditor is in possession of an unpaid note and mortgage for part of the property bearing a greater rate of interest than 6 per cent.

### Account—Jurisdiction—"Fiduciary Capacity."

6. Courts of equity have jurisdiction to settle accounts whenever a fiduciary relation exists between the parties and the duty to render an account to one of the parties rests on the other, and a person is said to act or receive money or contract a debt in "fiduciary capacity" where the business which he transacts or the money or property which he handles is not his own or for his own benefit and the term is not restricted to technical or express trusts, but includes such offices or relations as those of attorney at law, guardian, executor, broker, agent, director of corporation, etc.

### Trusts—Conversion of Trust Property—Accounting.

7. Where a sheep owner, in order to relieve himself from debt, turned over his sheep to a creditor to manage, care for and sell and with the proceeds pay expenses and discharge debts owing by the owner, and pay the balance to the owner, equity has complete jurisdiction as for an accounting where it is claimed that the creditor has converted the trust property.

### Equity—Jurisdiction—Complete Relief.

8. A court of equity which has obtained jurisdiction of a controversy on any ground for any purpose will retain such jurisdiction for the administering of complete relief and doing entire justice with respect to the subject matter of the dispute.

### Equity—Jurisdiction—Complete Relief—Question Determined.

9. A court of equity, when its jurisdiction has been invoked for any equitable purpose, will proceed to determine any other equities existing between the parties connected with the main object of the suit and grant all relief necessary to an entire adjustment of such subject, provided it is authorized by the pleading.

[As to rule that equity assuming jurisdiction for one purpose will retain it for all purposes, see note in Ann. Cas. 1912A, 803.]

From Morrow: GILBERT W. PHELPS, Judge.

This is a suit for an accounting by F. M. Templeton against Charles Bockler. From a decree in favor of defendant, plaintiff appeals. The facts are set forth in the opinion of the court.

REVERSED. DECREE RENDERED.

REHEARING DENIED.

For appellant there was a brief by *Mr. Sam Van Vactor.*

For respondent there was a brief by *Mr. Clinton E. Woodson.*

In Banc. MR. JUSTICE RAMSEY delivered the opinion of the court.

In September, 1908, the plaintiff owned, in Eastern Oregon, a farm, 3,800 head of sheep, and other personal property. The farm was encumbered with a mortgage for about $12,500. These sheep were in two bands, and the defendant held a mortgage on one band for $5,000 and interest, and the Bank of Heppner held a mortgage on the other band for $4,000 and interest. The plaintiff owed other debts amounting to from $1,200 to $2,400 that were not secured. His total indebtedness, including interest, was approximately $24,000. The price of sheep was at that time low, and the plaintiff was financially embarassed, and threatened with a suit to foreclose the mortgage on his farm. The defendant is possessed of financial means, and has had experience in the sheep business. The plaintiff applied to him for assistance in the fall of 1908. The defendant took up the mortgage for $4,000 and interest held by the Bank of Heppner, and on November 9, 1909, the plaintiff executed to him a new chattel

mortgage on all of the plaintiff's said sheep for the amount of the mortgage that he had on part of said sheep, and also for the amount of the mortgage that the Bank of Heppner held as stated *supra*, the new mortgage being executed for $10,085, that being the total amount of said two mortgages, with accrued interest. This new mortgage was executed in lieu of the other two mortgages, and it bore interest at the rate of ten per cent per annum. The complaint sets out substantially the facts stated *supra*. The complaint alleges, in substance, also:

"That on or about December 20, 1908, the plaintiff, being in debt as above stated, it was mutually agreed by and between the plaintiff and the defendant, that the defendant would assist the plaintiff in the running and handling of said sheep until the same should be marketable, and that thereafter and as soon as said sheep should become marketable the said defendant, as trustee for plaintiff, would sell and dispose of said sheep, together with the wool to be shorn therefrom, in the spring of 1909, for the best sum obtainable therefor, and that the proceeds derived therefrom should, by the defendant as said trustee, be applied as follows: First to the payment of the running expenses of said sheep; second, to the payment of the amount due on said promissory note to defendant; third, to the payment of the said unsecured claims hereinbefore mentioned, and reasonable compensation to the defendant for such services. That it was expressly understood and agreed by and between the plaintiff and defendant at said time that after making the payments as above set forth the defendant was to account to plaintiff for any sums of money then remaining in his hands from the sale of said sheep, and pay such sums over to plaintiff. That thereafter and during the year of 1909, the defendant, as such trustee, and agent of the plaintiff, took into his possession the whole of said personal property, together with 55 tons of hay, which plaintiff delivered to defendant under the terms and

73 Or.—32

conditions of said agreement and sold and disposed of the whole thereof, together with the wool shorn from said sheep during the spring of 1909, and received therefor the total sum of about $22,000, the exact amount of which plaintiff is unable to state. That out of the funds so received the said defendant has paid said promissory note, the running expenses of said sheep and a part of the said unsecured claims. That the whole amount so paid out by defendant does not exceed in the aggregate more than $14,000, and that reasonable compensation for the defendant's service as such trustee and agent is the sum of $500, and that after applying the moneys received from said sale in accordance with said agreement there remained in the possession of defendant the sum of about $6,500, which sum was immediately due and owing from defendant to plaintiff. That the defendant, in violation of the terms of his said trust, and with the intent and for the purpose of defrauding the plaintiff, has and does wrongfully and unlawfully retain and convert to his own use the whole of said sum, except the sum of $600 thereof, paid to plaintiff by defendant since the said sale, and prior to the commencement of this suit. That plaintiff is unable to allege the exact amount of money received by defendant for said personal property, or the exact amounts by him paid out on the indebtedness of plaintiff and as running expenses of said sheep, for the reason that the defendant has, at all times since the sale of said personal property, failed and refused to render to plaintiff an account thereof," etc.

The defendant demurred to the complaint, alleging that it does not state facts sufficient to constitute a cause of suit, or to entitle the plaintiff any relief. The demurrer was overruled. The answer denied much of the complaint, but admitted parts thereof, and set up new matter. The answer alleges, substantially, the following as the chief defense:

"That it was mutually agreed by and between plaintiff and defendant that defendant should assist plain-

tiff in delaying and postponing foreclosure upon said
real property and in holding and running said personal
property thereon until such personal property could
be sold for its reasonable value, which it did not then
command; that against the aid and assistance of defend-
ant, plaintiff would put up all of his equity and interest
in and to all of said sheep, also all of said horses and
hay, and that upon the sale of such personal property
as aforesaid, and after payment of the expenses of
running said personal property, plaintiff's mortgage
and certain unsecured claims, all remaining proceeds
from sales and all of the personal property, if any,
remaining unsold should belong equally to and be
divided equally between plaintiff and this defendant.
That in pursuance of said agreement defendant im-
mediately entered into joint control and direction
of said personal property with plaintiff, and advanced
about $2,500 in money and pledged his credit for other
large sums for the running expenses of said personal
property and to meet claims that were a statutory
lien against same, and further obligated himself upon
an undertaking in the sum of $13,000 to prevent a fore-
closure sale of said real property and to procure and
retain the use of same for pasturage and for the pur-
pose of raising feed for said personal property, and
defendant gave all of his time, labor, and attention to
assisting plaintiff in the running and management of
said personal property and business from the date
aforesaid until about the 7th day of January, 1910,
and that during all of said time plaintiff had an equal
voice and discretion with the defendant in the running
and management of said stock and business and in the
disposition of the proceeds derived therefrom.     That
on or about the 1st day of November, 1909, defendant's
note secured by a mortgage on said sheep had, by pay-
ments thereon, been reduced to the sum of $6,300; that
there were then in the hands of plaintiff and defendant
and belonging to said business 1,960 head of ewes, 28
bucks, 1,534 lambs, 20 head of horses, and about 200
tons of hay.     That plaintiff thereupon proposed to de-
fendant that defendant accept said 1,960 ewes, 28 bucks,

and about 55 tons of hay in full payment of defendant's claim for the balance due upon his note and mortgage, and that defendant accepted such proposition of plaintiff and received and took over said 1,960 ewes, 28 bucks and about 55 tons of hay in payment of the sum due him upon said note and mortgage. That thereupon and at that time plaintiff and defendant had a full and complete accounting and settlement concerning said business, and that defendant then and there furnished to plaintiff an itemized statement in writing of all sums received and disbursed in the running of said business and personal property from the time defendant entered into joint management thereof to such date of accounting,'' etc.

The reply admits parts of the answer, but denies other portions thereof. The court below entered a decree in favor of the defendant, dismissing the suit without prejudice, etc.

The court below required the defendant to render and present an account, and the account presented showed that he had received, belonging to the plaintiff, in the business referred to in the complaint, the aggregate sum of $11,710.45, and that he had expended for the benefit of the plaintiff in said business items aggregating $11,684.39. He admits owing the plaintiff a balance of $160 which he tendered the plaintiff, before this suit was commenced. The said account stated the items of receipts and of expenditure in detail. The defendant kept an account of the items of said business, but the plaintiff did not do so. The plaintiff did not materially dispute any of the items of said account, but contended that it failed to include any account of the sale of sheep by the defendant to Baxter & Johnson. The defendant sold to Baxter & Johnson, on November 15, 1909, 1,960 head of ewes, 55 tons of hay and 28 bucks for $10,400, and took notes and mortgages for

said sheep *in his own name.* The defendant admits that those sheep belonged to the plaintiff at one time. The plaintiff, as shown *supra,* on November 9, 1908, mortgaged to the defendant 3,800 sheep to secure the payment of said $10,085. The sheep sold to Baxter & Johnson, in November, 1909, are a part of those sheep, and they belonged to the plaintiff, unless he disposed of them to the defendant between November 9, 1908, and the date of said sale to Baxter & Johnson, on November 15, 1909.

If the plaintiff did not, in some way, between November 9, 1908, and November 15, 1909, vest the title to said sheep in the defendant, the proceeds of the sale of said sheep belonged to the plaintiff, subject to the payment of the balance then owing from the plaintiff to the defendant on said mortgage, executed to the defendant on November 9, 1908, as stated *supra.* Did the plaintiff, by any means, convey to the defendant title to said sheep and hay, between November 9, 1908, and November 15, 1909, the date of the sale of said sheep and hay to Baxter & Johnson? This is the main question for decision.

The defendant's contention is set forth in his brief thus:

"Plaintiff and defendant ran and managed said personal property jointly from November 8, 1908, until the winter of 1909, or 14 months, each having an equal voice in the management thereof. On November 1, 1909, defendant's note had been reduced to $6,218.22. The property then on hand consisted of 1,960 ewes, 1,534 lambs, 28 bucks, 20 horses and about 200 tons of hay. By mutual agreement at that time between defendant and plaintiff defendant accepted the 1,960 ewes, 28 bucks and 55 tons of hay in payment of the balance due on his note, and the note was thereafter delivered over to plaintiff. On or about the 15th

day of November, 1909, defendant sold said 1,960 head of ewes, 28 bucks and 55 tons of hay to Baxter & Johnson of Spray, Oregon, taking their note for the sheep secured by a chattel mortgage on the sheep in the sum of $9,850. In the month of January thereafter defendant left plaintiff's place and terminated his relationship with plaintiff, making no further claim upon the remaining property.''

The plaintiff's contention is as follows:

''The defendant went into possession of the said mortgaged property and continued in possession of the same until about the 15th day of November, 1909, and during said time disposed of considerable thereof. That on or about the said date he had in his possession of said property, 1,960 head of ewes, 55 tons of hay and 28 bucks, which he, on or about November 15, 1909 (Evidence, Book 2, page 45), sold to Baxter & Johnson for the sum of $10,400, taking notes and mortgages therefor payable to himself, and which he converted to his own use, claiming to do so under the agreement alleged in his further and separate answer, and which was, according to the testimony of the defendant, entered into between plaintiff and himself verbally and without witnesses. According to the testimony of the defendant (Evidence, Book 2, pages 28–30), after repaying himself for all sums advanced and the amount due on the mortgaged indebtedness, together with all the running expenses, there remained in his hands represented by said promissory note the sum of $4,181.78, the proceeds of the property mortgaged to defendant, and which, defendant testifies, represented a profit to him in such sum by reason of the alleged agreement between himself and plaintiff.''

The plaintiff contends that the defendant went into possession of said property with him, to assist him in attending to said business and in managing his property, so as to prevent its being sacrificed at forced sales. He says that the arrangement was that, when

they had stuff to sell, they would sell it, and pay his indebtedness, and, if there was any balance left, after paying his debts, it was to be his.  The plaintiff testifies that he told the defendant that he would pay him for his trouble or work and for any money that he was out, and that he would pay him interest on any money that he furnished, and that he directed him, at different times, to keep a strict account of all moneys he paid out.  The plaintiff testifies that there was no partnership in the business, and that he never agreed, at any time, that the defendant should have or own any part of the property, and that the agreement was that they would sell the property and pay his debts, and that what remained, after discharging his indebtedness, should belong to him.  All expenses were to be paid out of the proceeds of the property.  The evidence of the defendant shows that all expenses of every kind pertaining to the business, including board and traveling expenses, were paid out of the plaintiff's property. The defendant's expenses of every kind connected with the business were so paid.  The defendant usually handled the money and made the sales of the property. We believe  that he does not claim to have expended a cent that was not repaid to him.  The plaintiff contends and testifies that he told the defendant, at the beginning, that he would pay him for his trouble and work, and he is willing that the defendant be allowed for the value of his services.  On the other hand, the defendant contends that, at first there was a partnership between him and the plaintiff, and that they were to manage the business jointly and pay the plaintiff's debts, and the running expenses of the business, and that what was left, after doing so, was to be divided equally between them; but that after payments had been made on his note and mortgage in November,

1909, so that it was reduced to $6,218.22, it was agreed between him and the plaintiff that the defendant should have and accept the 1,960 ewes, 28 bucks and 55 tons of hay that were subsequently sold to Baxter & Johnson, in payment of the said balance due him on his said note and mortgage, and that he obtained title to said property in that manner. He testifies to his said contention, but he is not corroborated in relation thereto by any witness, or by any circumstances. The plaintiff, by his evidence, denies said alleged facts claimed and testified to by the defendant, and asserts that there was no partnership between him and the defendant, and that he did not turn over said sheep and hay in payment of said note and mortgage, or at all. Neither of the parties is impeached, and we are unable to determine which one of them has testified to the truth.

1, 2. It being an admitted facts that the sheep belonged to the plaintiff on November 9, 1908, there is a *prima facie* presumption that the title to said sheep continued to be in him on November 15, 1909. In his law of Presumptive Evidence (2 ed.), page 210, Mr. Lawson says:

"When a person is proved to be the owner of personal property with the present right of possesion, the presumption is that he *continues to be the owner,* with the right of possession, until there is evidence that he has parted with that ownership or right of possession, and the mere fact that the property is in the possession of another, with his consent, does not raise a legal presumption of change of title so as to shift the burden of proof upon the original owner, to show that he retains his right of property and his right of possession therein."

Section 799, subdivision 33, L. O. L., declares it to be a disputable presumption "that a thing once proved

to exist continues to exist as long as is usual with things of that nature.'' Section 793, L. O. L., declares *presumptions* to be *evidence*. See, also, 16 Cyc., pp. 1052, 1055. This presumption aids the plaintiff on this point. The evidence of the plaintiff is entitled to the same weight that the testimony of the defendant is, and hence we find that the defendant has failed to make out his contention that said property was turned over to him in payment of said note and mortgage. We find, also, that the title to said property continued in the plaintiff until it was sold to Baxter & Johnson on November 15, 1909, and that the proceeds of said sale belonged to the plaintiff, subject, however, to the payment of the balance then owing to the defendant upon said note and mortgage.

The defendant sold said sheep and hay to Baxter & Johnson for the aggregate sum of $10,400. Of this sum $550, the price of the hay, was paid to the defendant in cash, and $9,858 thereof, the price of the ewes and bucks, was not paid; but Baxter & Johnson executed to the defendant a note for that amount, bearing interest, and secured its payment by a mortgage upon said sheep. *Said note and mortgage were made payable to the defendant.* At the date of the sale of said sheep and hay to Baxter & Johnson, the plaintiff owed the defendant on said note and mortgage, executed to him as stated *supra,* a balance of $6,218.22, and no more. Deducting said sum of $6,218.22 from the said sum of $10,400, the amount of the proceeds of said sale, there remained of said proceeds in the hands of the defendant, belonging to the plaintiff, after discharging what the plaintiff then owed the defendant, as stated *supra,* the sum of $4,181.78. We hold that this balance belonged to the plaintiff at the date of said

sale. Referring in his evidence to this balance of
$4,181.78 the defendant says:

"If I ever get the money from Baxter & Johnson (on
the mortgage) it will represent what I make out of
these sheep."

In other words, if he collects said mortgage, he will
make a clear profit out of the business with the plain-
tiff, amounting to $4,181.78.

3. The defendant admits that he owed the plaintiff
a balance of $160, which he tendered to the plaintiff
before this suit was commenced. Adding this to the
other item, we find that there was owing to the plain-
tiff from the defendant on November 15, 1909, after de-
ducting the amount due the defendant from the plain-
tiff on said mortgage of November 9, 1908, a total
balance of $4,341.78. However, we allow the defend-
ant $1,000 for his services to the plaintiff in the busi-
ness referred to, and this should be deducted from said
sum of $4,341.78, leaving still owing to the plaintiff
from the defendant, after allowing the defendant all
credits to which he is entitled, the sum of $3,341.78 on
November 15, 1909. We find that the defendant, by
taking the note and mortgage from Baxter & Johnson
in his own name and claiming to own the whole thereof,
and denying that any part thereof belonged to the
plaintiff, converted the same to his own use.

4. A trust is an equitable obligation, either express
or implied, resting upon a person by reason of a confi-
dence reposed in him to apply or deal with property
for the benefit of some other person, or for the benefit
of himself and another or others, according to such
confidence. It is a holding of property, subject to a
duty of employing it or applying its proceeds accord-
ing to directions given by the person from whom it

was derived: Black's Law Dictionary (2 ed.), page
1175; 39 Cyc. 17.

5. The defendant received the hay and the sheep
in trust to take care of them and to sell them and apply
the proceeds thereof to the payment of the expenses
of the trust and to the satisfaction of the amount due
the defendant from the plaintiff on said note and mort-
gage, held by the defendant, and to return to the plain-
tiff all of the proceeds of such sale that remained after
paying said expenses and the said indebtedness, owing
the defendant as stated *supra.* The evidence shows
that the defendant converted said balance of $3,341.78
to his own use. He is properly chargeable with in-
terest on said $3,341.78 from November 15, 1909, at the
rate of 6 per cent per annum. The note and mortgage
which he took at that time in his own name from Baxter
& Johnson doubtless bears interest at a greater rate
than that, but, under the circumstances, we will charge
him with interest at the rate of 6 per cent per annum.

6. The rule is universal that courts of equity have
jurisdiction to settle accounts whenever a fiduciary re-
lation exists between the parties and the duty to ren-
der an account to one of the parties rests upon the
other: *Davis* v. *Hofer,* 38 Or. 153, (63 Pac 56) ; 1 Cyc.
427; *Warren* v. *Holbrook,* 95 Mich. 185 (54 N. W. 712
35 Am. St. Rep. 554) ; 1 R. C. L. 222; 1 Ency. Pl. &
Pr. 96; *Fowle* v. *Lawrason,* 30 U. S. (5 Pet.) 503 (8
L. Ed. 204).

1 Ency. Pl. & Pr. 96, says:

"It may be said generally that whenever there is
a fiduciary relation, such as that of trustee, agent,
executor, etc., the right to an accounting in equity
is undoubted."

In *Fowle* v. *Lawrason,* 30 U. S. (5 Pet.) 503 (8 L.
Ed. 204), Chief Justice MARSHALL says, *inter alia:*

"In all cases in which an action of account would be the proper remedy at law, and in all cases where a trustee is a party, the jurisdiction of a court of equity is undoubted. It is the appropriate tribunal."

In *Davis* v. *Hofer,* 38 Or. 153 (63 Pac. 56), the court says:

"The rule is of universal application that a court of equity has jurisdiction to settle an account wherever a fiduciary relation exists between the parties upon whom the duty of keeping accounts rests."

In *Warren* v. *Holbrook,* 95 Mich. 185 (54 N. W. 712, 35 Am. St. Rep. 554), the syllabus in part is:

"Where defendant, a bartender, is required to keep an accurate account of all money received, and pay it over to plaintiff, his employer, he occupies a fiduciary relation; and when he has been guilty of a breach of trust, in appropriating funds to his own use, the plaintiff may proceed in equity for an accounting."

1 Cyc. 427, 428, says:

"Courts of equity have jurisdiction over all trusts for the purpose of compelling an accounting, and the existence of any confidential or fiduciary relation is sufficient to invoke such jurisdiction, whenever the duty arising out of such relation rests upon one of the parties to render an account to the other. This embraces not only the supervisory power of such courts over trust estates generally, but over acts amounting to breach of trust and fraudulent conduct on the part of persons occupying relations of confidence. In such cases, it is not necessary that the accounts should be mutual, or that the bill should be framed for discovery. And it is no objection that an action at law sounding in damages may be brought for the breach; the legal and equitable remedies are concurrent, and the complainant has his election."

A person is said to act or to receive money or contract a debt in a fiduciary capacity when the business

which he transacts or the money or property which he handles is not his own or for his own benefit, but for the benefit of another person to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other.   The term is not restricted to technical or express trusts, but includes such offices or relations as those of attorney at law, guardian, executor, broker, agent, a director of a corporation, etc.: Black's Law Dictionary (2 ed.), 496.

7. The sheep and hay that the defendant received from the plaintiff, as shown *supra,* he was to manage, take care of and sell, and he was to apply the proceeds thereof to paying the expenses of said business and the plaintiff's indebtedness to him and other persons, and what remained, after making such payments, it was his duty to deliver to the plaintiff.   It was his duty to keep an accurate account of said business and to render an account thereof to the plaintiff.   He was acting in a fiduciary capacity.   We have no doubt that the court below, as a court of equity, had jurisdiction to require the defendant to render an account and to administer complete relief in the premises.

8. A court of equity which has obtained jurisdiction of a controversy on any ground or for any purpose will retain such jurisdiction for the administering of complete relief and doing entire justice with respect to the subject matter of the dispute.   By virtue of this rule, a court of equity, when its jurisdiction has been invoked for any equitable purpose, will proceed to determine any other equities existing between the parties, connected with the main subject of the suit, and grant all relief necessary to an entire adjustment of such subject, provided it be authorized by the pleadings: See, 16 Cyc., pp. 107, 108; *Heatherly* v. *Hadley,*

4 Or. 1; *Howe* v. *Taylor,* 6 Or. 284; *Phipps* v. *Kelly,* 12 Or. 213 (6 Pac. 707) ; *Haynes* v. *Whitsett,* 18 Or. 454 (22 Pac. 1072).

We find that the court below erred in not rendering a decree in favor of the plaintiff and against the defendant for the recovery of $3,341.78, with interest thereon from November 15, 1909, at the rate of 6 per cent per annum, and for costs and disbursements, and that the plaintiff is entitled to such a decree. The decree of the court below is reversed, and a decree of this court will be entered in favor of the plaintiff and against the defendant for $3,341.78, and interest thereon at the rate of 6 per centum from the 15th day of November, 1909, and for costs and disbursements in this court and in the court below.

REVERSED.    DECREE RENDERED.

REHEARING DENIED.