# NYE *v.* LINCOLN COUNTY BANK.

(146 Pac. 983.)

**Appeal and Error—Findings of Court—Effect in Equitable Actions.**

1. Where the evidence in an action to cancel a note and mortgage was in conflict, the findings of the trial judge were entitled to great weight.

**Cancellation of Instruments — Note and Mortgage not Intended to Operate—Sufficiency of Evidence.**

2. Evidence *held* sufficient to sustain plaintiff's contention that a note and mortgage given to defendant bank had not been intended by the parties to operate as such, but merely to serve the bank as an accommodation by apparently increasing its resources on examination by the state bank examiner.

**Cancellation of Instruments—Evidence to Justify Relief.**

3. To justify the cancellation of a note and mortgage on the ground that the instruments had been given as a matter of accommodation, and not to operate in their apparent character, the evidence must be clear and convincing.

From Lincoln: JAMES W. HAMILTON, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is a suit by Frank Nye against the Lincoln County Bank, a corporation, to cancel a note and mortgage upon a quarter section of timber land in Lincoln County, Oregon, given by the plaintiff to the defendant, for want of consideration. The Circuit Court granted a decree in favor of the plaintiff. From this the defendant appeals.

The plaintiff alleges the following facts: In the fall of 1908 the plaintiff, Frank Nye, owned a valuable timber claim in the above-named county, worth approximately $4,000. At that time the Lincoln County Bank and the Yaquina Bay Lumber Company were two closely allied institutions; the stockholders in each being practically the same. The bank was financing the lumber company, to which it had loaned about all

its funds.   The officers of the bank feared that the
bank examiner would take vigorous exception to this
loan, for which they had taken inadequate security, and
would commence proceedings to revoke the corporate
charter of the bank for violation of the banking laws
of the State of Oregon.   For the purpose of covering
up and concealing the above act, the officers induced
Frank Nye to give the bank a note for $2,000, secured
by a mortgage on his timber claim, representing and
declaring that they would use these instruments only
to assure the bank inspector that a part of the indebt-
edness of the lumber company was, in fact, the obliga-
tion of Frank Nye, for which the bank did have ample
security.   They further represented to Nye that after
the bank examiner had been satisfied, and the bank
should be able to make a different disposition of its
funds, the note and mortgage would be canceled and
returned.   Relying on these representations, plaintiff,
Nye, wholly without consideration therefor, and purely
as an accommodation to the bank, executed and deliv-
ered the instruments in question, which the bank now
refuses to cancel and return.   The answer denies these
allegations, and alleges as a separate defense, in effect,
that in the year 1910 the bank was reorganized, which
involved practically an entire change in the stockhold-
ings of the corporation and in its acting and managing
officers; that the plaintiff knew of this, but never at
any time asserted the alleged invalidity or lack of con-
sideration for the mortgage, and by reason of his long
neglect and laches in asserting the same, and because
he permitted the mortgage to remain as an asset of the
bank unquestioned for so long a time, he should be es-
topped from now claiming its invalidity or lack of con-
sideration.   The bank claims that coincidently with the
delivery of the mortgage the Yaquina Bay Lumber

Company issued to the plaintiff $2,000 in amount of its capital stock, which was indorsed and delivered to the defendant bank by the plaintiff; that Nye purchased the stock from the lumber company, making arrangements with the bank to loan him the money for that purpose upon the security of the mortgage, with the stock as additional collateral, that upon the delivery of the note and stock the bank canceled $2,000 in amount of the notes of the lumber company which it held. The reply put in issue the new matter of the answer.

Plaintiff, Frank Nye, testified in substance that in May, 1908, he was in the Lincoln County Bank, and Mr. Scarth, the owner at that time, told him that the bank was in bad shape by loaning too much money to the Yaquina Bay Lumber Company; that they had to get some more security from that company to make it look good to the inspector because their bank was incorporated for $10,000 only, and they didn't like to let out more than $2,500 to any one concern; and further, to quote from plaintiff's evidence:

"And he wanted to know of me if I would not give a mortgage to help secure this indebtedness of the Yaquina Bay Lumber Company so that it would look good to the bank inspector, and I told them I didn't know; and so it wasn't long afterward until he came over to the mill, and him and Altree asked me if I would not give them a note and mortgage, and that they needed the money to secure the bank, and I told them I would. He said there would be nothing dishonest nor out of the way about it, for they had other mortgages given the same way; and along in November, some time going to Newport, Mr. Scarth overtook me on the road and said he would like to have me give that mortgage in two or three days, and I told him I would. * * "

Plaintiff stated that they drew up the mortgage and brought it to him and he signed it. His testimony con-

cerning the return of the mortgage is as follows, in part:

"Q. And now after you gave them the mortgage did you ever have any conversation after that time with Mr. Scarth about the return of the mortgage?

"A. I told them afterward; I asked them about it, and he told me he would not return it. * * He said that he had the best of me, and he had things fixed up in shape so I could not get it.

"Q. Say you were stuck?

"A. Yes; I was stuck, and the Yaquina Bay Lumber Company looked after their business affairs and I had ought to have looked after mine. * * "

Nye further testified:

"I asked him about two years ago over by his house, and he told me he would not do it. * * He said he had the best of me; had my stock and he would keep it. * * I told him I would sue him for it, and he said, 'Go ahead'; it would not do any good."

Plaintiff said that he never received anything from the bank in the way of a loan; that Mr. Scarth told him at the time of giving the mortgage he would return the same in two years.

On cross-examination this witness stated:

"A. After I signed this mortgage they told me to come over to the bank, that they wanted to draw up some shares for the Yaquina Bay Lumber Company and sign over to me, so to make it look good to the bank.

"Q. Did you take those shares?

"A. I let them keep them; they wanted to keep them, so as to make it look good to the bank inspector, and they would give the mortgage back to me."

Upon being shown the certificate of stock, plaintiff said:

"Yes; that is what they wanted me to sign, so as to make it look good to the bank inspector so they could turn over this mortgage. * * *"

It appears that Nye had been working in the mill for a long time, and was friendly with the officers of the bank, who often went to the mill to tell him what they wanted done, and that at one time he borrowed $50 from the bank. According to plaintiff's statements, Scarth told him that he would have some money of his own, and would let the mortgage loose in a little while; that at the end of the year Scarth asked him to pay interest on the note, and he told him he had nothing to pay it with; that Scarth said he would give it to him when he turned the note back; that Mr. Scarth went out of the bank about two years ago. On redirect examination Nye stated that he never bought any stock in the lumber company; that in about four or five days after the mortgage was given he asked Scarth when he would return the mortgage and how long he would need it, and he said, "For two years." Plaintiff testified:

"Oliver Altree drew up a check to me and wrote on the check and said, 'Interest on the mortgage,' and told me and Scarth said to me if I would give him this check he would give the money back to me."

He stated that the check was for $150. It appears that Nye was brought up on a ranch, and had never done business for himself. J. C. Altree, an employee of the lumber company, testified that he and his brother Oliver gave a mortgage for $2,000 to the bank under similar circumstances, and with the understanding that it was to be given back. W. Scarth, cashier of the Lincoln County Bank for some years, testified as follows:

"I notified Mr. Altree that the indebtedness of the Yaquina Bay Lumber Company was too much for us to carry, and for him to make some arrangement to cut that down or give the bank security to cover the same, and he said he could sell the stock of the mill company to Mr. Nye and to his brother, and I told him to go ahead and sell the stock, and then he brought them in, and they gave mortgages on the timber claims, and the stock was turned over to them, and then assigned back to the bank to hold as collateral security for the mortgages. * * I have never spoken, that I can remember, to Nye at all, except that evening in the bank they gave the mortgages. * * I don't remember whether they [the mortgages] were executed that night or not. I don't think so, though. * * I told him [Nye] if he ever did ask me that the notes and mortgage would be given back when he would pay for it. * * I never promised to give the mortgage up at any time until it was paid.

"Q. Did you ever tell Mr. Nye that you wanted this note to show the bank examiner, to make things look right or anything of that kind?

"A. No, sir.

"Q. What is the fact about that?

"A. I told him the Yaquina Bay Lumber Company's indebtedness to us under the new state law was too great.

"Q. Who did you tell that?

"A. Mr. Altree.

"Q. Did you ever tell Mr. Nye that?

"A. I haven't any recollection of ever telling Mr. Nye that."

Mr. Scarth stated that he held 20 shares of stock in the Yaquina Bay Lumber Company until 1908, up to which time he was on the board of directors. On cross-examination he testified the lumber company's indebtedness to the bank to be about $25,000. The following testimony also appears:

"Q. Well, now, how is it, Mr. Scarth, that you claim this mortgage was taken; what do you claim the bank gave Mr. Nye as consideration for the mortgage?

"A. The bank gave Mr. Nye nothing as consideration for the mortgage; gave him cash.

"Q. Gave him cash?

"A. Well, gave him a check.

"Q. For how much?

"A. For $2,000.

"Q. For $2,000?

"A. If I remember, that is how the transaction was done.

"Q. When was that check given?

"A. That same day; that same evening.

"Q. And that check, I suppose, was cashed by Mr. Nye?

"A. No; he got the stock for that of the Yaquina Bay Lumber Company.

"Q. It was the check of the bank?

"A. I don't remember that quite, but I know he got the stock of the Yaquina Bay Lumber Company.

"Q. Let's come back to the check; you say $2,000 was given to Mr. Nye by check, and that check in the course of the bank business—

"A. I think it was given by check; I don't remember. * * I think he got a check, but I know he got stock of the lumber company for the mortgage; that was the consideration of the mortgage, the stock in the lumber company.

"Q. The stock in the lumber company?

"A. Yes; he was buying stock of the lumber company and the bank advanced him the money on his mortgage to buy this stock. * * I think the bank just credited the lumber company with $2,000. * *

"Q. If the bank or Mr. Nye was buying the stock of the lumber company, why didn't he pay the lumber company or give his note to the lumber company?

"A. No answer. * *

"Q. And this mortgage was due in 1910, and the interest has not been paid except for the first year, ac-

cording to your version; why hasn't the bank fore-
closed?

"A. It has not seen fit to. * *

"Q. You say Mr. Nye never claimed to you at any
time that the note and mortgage was invalid?

"A. Never, that I can remember."

Mr. Thomas Lees testified in part that the lumber
company's indebtedness to the bank was very heavy,
and that he advised Mr. Scarth to get it cut down;
that he never talked with Mr. Nye; that he held stock
in the company as protection to the bank so they could
control the business. G. B. McClusky, the notary public
who certified to the acknowledgment of the mortgage
by Nye, testified that he had no remembrance of taking
an acknowledgment of such mortgage. C. E. Haw-
kins, president of the bank, stated that the plaintiff
made no claim of defense to him; that he was a direc-
tor when the mortgage was given; that he did not want
to foreclose, because he would probably have to bid
it in. Plaintiff, Nye, was recalled, and testified that
he never made any claim for mortgage to Mr. Haw-
kins; that he made claim to Mr. Scarth, supposing he
was still connected with the bank; that Scarth wanted
him to go security for the bank, but that he never asked
him to buy stock in the company; that Mr. Oliver
Altree, the president, never asked him to buy any
stock; that the stock certificate was assigned to him
two or three days after the mortgage was given.

The trial court heard the witnesses, and found that
the note and mortgage were executed to defendant
wholly without consideration; that defendant, through
its officers, procured plaintiff to execute the note and
mortgage in order that it might make a more satis-
factory showing to the bank examiner of the State of
Oregon with reference to the indebtedness to defend-

ant of the Yaquina Bay Lumber Company, and the defendant promised to return to plaintiff said note and mortgage; that plaintiff was at said time a laborer in the employment of the Yaquina Bay Lumber Company, and was influenced so to do by the officers of defendant and the Yaquina Bay Lumber Company, which officers were acting together to secure plaintiff to execute the note and mortgage. As a conclusion of law, the court found that the plaintiff's act, being largely induced by the influence exercised by his employers, does not render him a participant in the wrong committed by the defendant in the use made by it of the note and mortgage, to the extent that equitable relief should be denied.                AFFIRMED.   REHEARING DENIED.

For appellant there was a brief over the names of *Mr. C. E. Hawkins* and *Messrs. Woodcock, Smith & Bryson,* with an oral argument by *Mr. E. R. Bryson.*

For respondent there was a brief over the names of *Mr. Ralph R. Duniway, Mr. C. E. Whealdon* and *Mr. J. F. Stewart,* with oral arguments by *Mr. Duniway* and *Mr. Whealdon.*

MR. JUSTICE BEAN delivered the opinion of the court.

1-3. The case depends largely upon questions of fact. The evidence is conflicting. The main facts are testified to upon one side by Frank Nye, plaintiff, and upon the other by Mr. Scarth, the former cashier of the defendant bank. Under such conditions the findings of the decision of the trial judge who heard the witnesses and observed their demeanor upon the stand are entitled to great weight: *Scott* v. *Hubbard,* 67 Or. 498 (136 Pac. 653); *Hurlburt* v. *Morris,* 68 Or. 259 (135 Pac. 536). A reading of the evidence convinces

us that the conclusions of the trial court are correct. The proof meets the requirement contended for by defendant's counsel that, to justify a cancellation of the note and mortgage, the evidence should be clear and convincing: 3 Jones, Evidence, § 447; *United States* v. *Maxwell Land Grant Co.*, 121 U. S. 325 (30 L. Ed. 956, 959, 7 Sup. Ct. Rep. 1015). The substance of Mr. Scarth's evidence is to the same effect as shown upon the face of the note and mortgage and the certificate of stock, and goes but little further. He states, in effect, that he does not remember in regard to the details as testified to by the plaintiff. The condition of the bank at the time the mortgage was executed was admittedly as asserted by the plaintiff. Nye is corroborated as to some circumstances by J. C. Altree. If Mr. Oliver Altree, the president of the Yaquina Bay Lumber Company, obtained the mortgage from the plaintiff as security for the lumber company, he did not appear as a witness to such a fact. Neither is any reason given for defendant not producing such witness. It appears that the plaintiff was led to believe that he was executing the note and mortgage as an accommodation to the defendant bank. The claim of the defendant that shares of stock in the Yaquina Bay Lumber Company were sold to the plaintiff, and that the note and mortgage were given on account thereof, is not sustained by the proof. The plaintiff, a laborer in the mill in which the defendant bank was largely interested, at least to the extent of a loan of $25,000, was induced by the importunities of the officer of the bank aided by the officer of the mill company to execute the note and mortgage with a promise that it would be returned to him by the bank. In equity and honest dealing the note and mortgage should be canceled and returned to the plaintiff: 1 Story, Equity Juris. (13 ed.), § 188.

The decree of the Circuit Court provided that the stock of the Yaquina Bay Lumber Company claimed to be held by defendant as additional security for the $2,000 loan be returned to the secretary of the Yaquina Bay Lumber Company freed from any claim of the defendant. The defendant should be allowed, if it desires, to retain the certificate of stock as security for any sum due it from the lumber company. The decree of the lower court will be changed in this respect, without modification as to costs. The decree canceling the note and mortgage is affirmed.

                              AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE BENSON concur.