Argued March 15, reversed July 30, rehearing denied September 24, 1929.

R. M. WALKER, EXECUTOR, *v.* HATTIE A. HEWETT ET AL.

(279 Pac. 865.)

For appellants there was a brief and oral argument by *Mr. Oscar Hayter*.

For respondent there was a brief over the name of *Mr. Elmer Barnhart,* with an oral argument by *Mr. B. F. Swope.*

BEAN, J.—Mrs. Mary E. Stansberry, at the time the suit was commenced, was eighty-one years of age and had been a resident of Independence for many years. The testimony indicates that she had enjoyed fairly good health for a person of her age, except for four or five spells of sickness; altho in recent years she had suffered to some extent with heart trouble. In December, 1926, she sustained a heart attack more severe than usual, in conjunction with bronchitis and age debility. At that time her son, J. E. Stansberry, commonly called Ed, came from his residence at Pendleton, Oregon, and cared for his mother during her illness. She recovered from that sickness, but was stricken again in March of the following year with a similar affliction.

On March 16, 1927, Doctor H. Charles Dunsmore of Independence, a trusted friend and adviser of Mrs. Stansberry, at her request, wrote, in substance, to the defendant Mrs. Hattie Hewett, living at Montesano, Washington, that Mrs. Stansberry was critically ill and it was thot she could not survive many days; she wished her daughter to come to her at her earliest convenience and remain until the end. Upon receiving the letter Mrs. Hewett at once wired that she would come. Accordingly she took the train, arriving at Independence on March 19, 1927, and went to her mother's home.

It also appears that Mrs. Lora Arrel, who had been caring for Mrs. Stansberry at her home, on March 16, 1927, addressed a letter to the defendant J. E. Stansberry at Pendleton, informing him of his mother's illness and that his "mother said to tell you that you can look for a wire any day to tell you she is gone." The letter did not contain a direct request for Ed to come to his mother, apparently on account of the recent death of his father. However, he lost no time in going to Independence, and arrived March 19th, the same day as his sister, and went to his mother's residence.

The testimony indicates that the two defendants stayed at their mother's home and cared for her from March 19, 1927, until the seventeenth day of April, following. During this period Mrs. Stansberry suffered considerably from her illness; while at times she would be very low and at other times she showed some improvement. The time she would live, according to the doctor's testimony, was problematical. After a time the parties realized that some other and more permanent arrangement should be made, looking to Mrs. Stansberry's welfare.

Mrs. Hewett is a widow. She operates a berry and fruit ranch near Montesano, which required her attention. J. E. Stansberry is a carpenter and had interests in Pendleton, which likewise demanded his attention. It was decided that Mrs. Stansberry was to deed her home place in Independence, being the real property described in the complaint, to the defendants. In consideration thereof, they were to provide for her in Independence temporarily, until Mrs. Hewett could return to Montesano and arrange her house, so that her mother could make her home at that place for the rest of her life with her daughter,

The daughter and son, in pursuance of this arrangement, made a written contract with Mrs. Arrel, above mentioned, which provided for Mrs. Stansberry to go to the home of Mrs. Arrel to be cared for during a period of sixty days, Mrs. Arrel to receive two dollars per day as compensation.

On the seventeenth day of April, 1927, Mrs. Stansberry was removed to the home of Mrs. Arrel. On the sixteenth day of April, 1927, the day the deed was executed, Mr. B. F. Swope, an attorney, who had done what little legal business Mrs. Stansberry had had before that time, was sent for and was requested to prepare the deed. He prepared that instrument and took it to Mrs. Stansberry where she executed it. It was witnessed by Mr. Swope and Mrs. Skinner and acknowledged before Mr. Swope as a notary public.

After Mrs. Stansberry was removed to the home of Mrs. Arrel, away from her own home, it appears she became dissatisfied with the arrangement. It was much like taking up a large old tree and attempting to set it out in a different place. She apparently changed her mind and sent for attorney B. F. Swope and said, "Lawyer, can you get my property back?"

This suit was instituted on April 20, 1927. A bitter feeling was created against her children. She died in July, 1927. Mrs. Stansberry, on account of her age and delicate health, was perfectly excusable for whatever she did. She had a very poor memory. Most of the time her mind was clear and bright.

Dr. A. J. Fawcett had attended Mrs. Stansberry during her spells of sickness for some time. It was necessary, as he testifies, to administer medicine to induce sleep. It appears he was there on March 19th in answer to the call of Mrs. Stansberry and she asked the doctor the following question: "Am I

mentally in condition to do any legal business?" The doctor answered: "You sure are."

The testimony shows that Mrs. Stansberry was very nervous. Dr. Fawcett states: "She is quite an old actor and she likes to tell things and act a good deal." At one time she screamed and thought a strange man was trying to take her away.

A short time before the deed was executed, Mrs. Stansberry, while her daughter and son were out of the room in the kitchen, for a few minutes, left the room in her nightclothes, with a bathrobe, and went out the front door and fell on the walk, bruising and injuring her arm and, as the defendants say, bruising her face and causing a discoloration. It is claimed on part of plaintiff that her daughter struck her and caused the discoloration of her face. The testimony does not bear out this accusation. Her son hearing the door shut when she went out, immediately followed and picked her up from the cement walk and laid her on the bed.

Dr. Fawcett instructed Mrs. Hewett not to allow too much company to visit Mrs. Stansberry, as it was not good for her as it would excite the heart and he recommended quiet. On this account several of Mrs. Stansberry's old acquaintances were not permitted to visit her at all times, especially when she had had two or three visitors during the day. This caused ill feeling in the neighborhood and excited a good deal of mistrust against defendants, especially Mrs. Hewett.

Whatever Mrs. Stansberry thought, or however much she changed her mind in regard to her daughter and son, a careful reading of the testimony does not show duress or undue influence upon Mrs. Stansberry, on the part of her son and daughter, in order to pro-

cure the execution of the deed in question. The allegations of the complaint in this respect are not sustained by the evidence.

■ The cancellation of a written instrument such as a deed is the exercise of an extraordinary power by a court of equity and to justify it the grounds of cancellation must be established by clear, convincing and well-founded evidence: 2 Black, Rescission and Cancellation, § 682, p. 1546; *Nye* v. *Lincoln County Bank,* 76 Or. 38 (146 Pac. 983).

■ Where one sues for the cancellation of a deed on the ground that it was procured by duress or undue influence, the burden of proof is upon the plaintiff to establish the facts alleged as the basis of the suit: 2 Black, Rescission and Cancellation, § 677, pp. 1535, 1536, and cases there cited.

Duress implies the yielding of the mind and will to physical constraint actually exerted or to the fear of some threatened and intolerable misfortune. Undue influence accomplishes a like result by the exertion of authority, importunity or the abuse of confidence, or by playing upon the passions, prejudices or superstitions of a mind incapable of vigorous resistance.

■ The evidence shows Mrs. Hewitt had at two or three prior times come to her mother's home and nursed her with care during her sickness. That while her daughter and son cared for their mother she had the best of care and attention. The defendants each have about six or seven thousand dollars in property and were responsible for their agreement to care for their mother during the rest of her life. It was a very natural arrangement that they made, apparently the best that could be done, under the circumstances. Mrs. Stansberry thoroughly understood the matter. She had the advice of her physician.

Her attorney was present and could have given any necessary advice if she had requested it. The deed is valid.

The decree of the Circuit Court is reversed and the suit dismissed.

REVERSED AND SUIT DISMISSED. REHEARING DENIED.

RAND and BELT, JJ., concur.

BROWN, J., took no part in the consideration of this case.